GIDEON GOSS AND ANOTHER v. ALEXANDER J. McCLAREN.

During the Term, the Judge has a discretion to grant a new trial, whenever, in his opinion, wrong or injustice has been done by the verdict ; and it is upon the ground of this discretion, that appellate Courts have refused to interfere to revise the granting of new trials ; but where the Term has passed, and a petition for a new trial is filed, it must disclose equitable grounds sufficient in themselves to entitle the party to a new trial ; and the granting of such new trial is as properly a matter for revision, as the granting of any other equitable relief.

Whatever doubt there may be, whether we ought not to have revised the judgment on the former appeal, (from the order for new trial, on a petition filed after the Term,) and whatever might be our decision if that question were now before us, there can be no doubt, that the decision then made (dismissing the appeal because from an interlocutory judgment,) ought to be deemed the law of this case in which it was made, and that having refused to entertain the appeal and revise the judgment then, (because the judgment was interlocutory,) we cannot decline it now, (after final judgment in the cause.)

Where the granting of new trials after the Term has been sanctioned by this Court, it has been in the exercise of an equitable jurisdiction, analogous to that exercised by Courts of Chancery in England and the Common Law States of the Union, in granting new trials in suits at law.

Goss v. McClaren.

Want of knowledge of evidence material to his defence, or of the recovery of a judgment against him where he was served with process, or of any other matter which it was material for him to know in order to make his defence, or apply in time for a new trial, has never been held to afford the party any excuse, if by the use of reasonable diligence he might have known it.

The rules respecting the grant of new trials on petition filed after the Term, held to be applicable to a petition filed after the Term to set aside a judgment by default; and see this case for circumstances under which the judgment setting aside a judgment by default, upon petition filed after the Term, was reversed and petition dismissed.

Appeal from Harrison. The appellants sued the appellee to recover a tract of land, and had judgment by default.— After the expiration of the Term, and after the issue of a writ of possession, appellee presented his petition to the Hon. Lemuel Dale Evans, then Judge of that District, asking an injunction and that the judgment by default be set aside. The injunction was immediately granted, and at the next Term, the appellants filed their answer, and moved to dissolve the injunction and dismiss the petition. The motion was overruled; the previous judgment by default set aside, and the case re-instated upon the docket. The plaintiffs appealed; but the appeal was dismissed on the ground that the judgment was merely interlocutory. (See 8 Tex. R. 341.) Afterwards the suit proceeded to trial before Hon. William W. Morris, and the defendant in the original suit had judgment, the merits of which are not material to this report.

The petition for injunction and to set aside the judgment by default, was as follows: To the Hon. Lemuel Dale Evans, Judge of the District Court for the sixth Judicial District, the petition of Alexander J. McClaren, who resides in the County of Harrison aforesaid, complains of James Pinckney Henderson, who resides in the County of San Augustine, and Gideon Goss, who resides in the County of Shelby, and shows, that the said defendants at the Spring Term of the District Court of Harrison County aforesaid, A. D., 1850, on the ninth day of July, it being a day within the said Term of said Court,

recovered a judgment against your petitioner for the following described land, (here followed a description of the land,) and also for the sum of twenty-five dollars damages for the detention of said land, and all the costs of suit in their behalf expended, taxed at about $12,50, which costs have been paid by petitioner. The petitioner further shows, that the said defendants, on the sixth day of July, A. D., 1850, claimed the said land as aforesaid described, and do yet claim the same, under a survey made by virtue of the headright certificate of William J. Hamlet; that the record of the field notes of said survey in the office of the County Surveyor of Harrison County aforesaid, shows that the said survey was made on the first day of December, 1839, by one Thomas J. McKee, who then was a Deputy Surveyor for the County of Shelby aforesaid; that the said field notes were not recorded in the County Surveyor's office of the County of Shelby previous to the year 1844; and that they were not recorded in the County Surveyor's office of the County of Harrison until the — day of ——, A. D., 1849, nor plotted upon the map of said County; that the said suit was commenced by the said defendants against your petitioner for the land aforesaid, on the first day of May, A. D., 1850.

The petitioner further shows that he was, at the time the aforesaid suit was commenced, to wit: on the first day of May, A. D., 1850, and is yet the owner of about one hundred and forty acres of land lying within the said Hamlet's aforesaid survey, of the value of $420, and being the north part of the same; which land, claimed by petitioner, is described as follows, to wit: (Here description of the land,) that the land, claimed by petitioner, as last described, is a part of a six hundred and forty acre tract, surveyed for one Nathan B. Phillips, by George D. McGimpsey, who was then the County Surveyor for Harrison County aforesaid, and was acting as a practical Surveyor for said County on the 12th day of March, A. D., 1841, by virtue of the headright certificate No. 110,

class 2nd, issued to him, the said Phillips, by the Board of Land Commissioners of Shelby County aforesaid, on the 4th day of April, A. D., 1839, which certificate was reported by the Board of Travelling Commissioners, as being a genuine and legal claim against the Government of Texas for so much land, and has been acknowledged as such by the said Government; that the unconditional certificate has been duly obtained; that the field notes of said survey have been duly recorded, and that a patent was duly issued by the said Government of Texas, on the 26th day of January, A. D., 1846, to the said Nathan B. Phillips, for the said six hundred and forty acres of land, surveyed as aforesaid, by virtue of his said certificate; which patent was duly recorded in the County Clerk's office of said County of Harrison in book E, pages 134 and 135, on the 26th day of January, A. D., 1846; that the said Phillips, by a deed duly executed and delivered with the usual covenants of warranty, on the 18th February, A. D., 1847, sold to one David Hill that part of his headright survey which your petitioner now owns, as aforesaid described, and which deed was duly proven and recorded in the County Court Clerk's office of said County of Harrison, on the 24th day of March, A. D., 1847, in book B, page 13; that the said Hill, by a deed duly executed and delivered, on the 29th day of March, A. D., 1847, sold the tract last aforesaid to one Maxfield Anderson, which deed was also duly proven and recorded in the aforesaid office, on the 5th day of April, A. D., 1847, in Book F, pages 51 and 52; that the said Anderson, by a deed duly executed and delivered, on the 6th day of December, A. D., 1847, sold the said last mentioned land to one Jonathan C. Craig, which said deed was duly proven and recorded in the office aforesaid, on the 18th day of December, A. D., 1847; that the said Craig, by a deed duly executed and delivered on the 4th day of August, A. D., 1848, sold said last mentioned land to the petitioner, which deed was duly proven and recorded in the office aforesaid on the next day

after the execution thereof, in Book F, pages 576, 577 and 578.

The petitioner further shows that the said Phillips, by his bond duly executed and delivered to the said Hill, on the 17th day of December, A. D., 1844, bargained, sold and conveyed the land last aforesaid to him the said Hill, and bound himself to execute to the said Hill a good and sufficient deed for the same in fee simple, as soon as the said Phillips should obtain a patent therefor from the Government of Texas ; which deed has been duly executed as above shown ; that the said bond was duly proven and recorded in the Clerk's office aforesaid on the 24th day of October, A. D., 1845, in Book D, page 334 ; that the said Phillips took the actual possession of said land, as of his own property, in the Fall of 1844, under and by virtue of a title bond executed and delivered to him by the said Hill for the same ; and that petitioner and those through whom the petitioner claims from the said Anderson, have had the actual, peaceable possession of the said last mentioned land, cultivating, using and enjoying the same, and paying taxes thereon ever since the Fall of 1844, and that petitioner still continues to hold possession of the same.

The petitioner further shows, that the petitioner, after the said defendants had commenced their aforesaid suit against him, and before judgment was taken on the same, and before the first day of said Term of said Court, gave notice of the pendency thereof to the said David Hill ; and that he, the said Hill, promised your petitioner that he would attend to the said suit, and defend petitioner's title to said land, and that petitioner, knowing that said Hill well understood the character of the title set up by the said defendants to said land, as well as the character of the title by which petitioner holds that part of the same, as above described, and believing that he would appear in said suit and cause the proper answer to be filed, and would defend petitioner's rights therein, as he had promised to do, and as by his covenants in his bond executed

as aforesaid to the said Anderson, he was bound to do, gave no further attention to said suit ; and that said Hill failed and neglected to appear in said suit, and to file any answer there-in whatever, but suffered judgment to be taken against your petitioner by default ; that petitioner did not know that judgment had been taken against him as aforesaid, in time to apply for a new trial, nor to set aside the said judgment at said Term of Court.

The petitioner further states that if he is ousted of the possession of said land as claimed by him, as aforesaid, and it is taken away from him by a writ of *habere facias possessionem*, or by any other writ known to the law, issued by virtue of said judgment, he will suffer an irreparable injury ; that the said last mentioned land forms that part of his plantation upon which he resides, and has his well and his garden, and is the only part of his land on which he has any water to supply his plantation ; and that the loss of it would greatly lessen the value of the rest of his land.

The petitioner further shows that some time in August, A. D., 1850, he applied to George Lane, an attorney at law, for advice in regard to said judgment, and that the said Lane advised petitioner that the said judgment in said case, by the Court rendered, was erroneous in this, it was for the land described in the petition and did not describe said land, and that petitioner, acting under the advice of the said Lane, filed a petition in the Clerk's office of the District Court of Harrison County, aforesaid, on the 19th of August, A. D., 1850, praying for a writ of error on said judgment, to the Supreme Court of the State ; that said Lane has since informed petitioner that he was mistaken as to the law, when he gave the advice aforesaid, and that the said judgment was correct, and that petitioner could claim no possible benefit by a writ of error to the Supreme Court ; the petitioner has not therefore sent the record of the said suit up to the Supreme Court, but has abandoned the same, and has ordered the Clerk of the

District Court aforesaid, to let an execution be issued on said judgment, and has filed a written statement of said abandonment of his said order to the Clerk, among the papers in said suit, and that petitioner has paid the said Clerk all the costs that accrued by filing said petition, &c., for said writ of error, and has given said defendants notice of said abandonment.

Petitioner says that said Hill informed him that he, said Hill, intended to defend said suit of Goss and Henderson against petitioner; that said Hill understood that petitioner and one Pamelia Clark were jointly sued by said Goss and Henderson, said Clark being sued for another portion of the land surveyed on said headright certificate of said Phillips, by the said Goss and Henderson by virtue of said survey on the headright certificate of said Hamlet; that said Hill told this petitioner, that believing that petitioner and said Clark were jointly sued as aforesaid, he secured the services of an attorney, and had said case continued at the said Term of said Court; and that he, said Hill, said he thought the case of petitioner being in the said case continued as aforesaid, that he gave himself no further trouble in regard to the matter; that said Hill told petitioner that he had no knowledge of said judgment against petitioner in favor of said Goss and Henderson till after the Term of said Court had passed, which statements of said Hill petitioner believes to be true.

Petitioner further says that the amount that he will be able to recover on said warranty of said Hill will be wholly inadequate to the loss of said land improved as aforesaid.

Prayer for injunction; that it be perpetuated; and for general relief. Petition sworn to and filed December 19th, 1850.

The defendants in this petition, plaintiffs in the original suit, excepted generally to the sufficiency of the petition, and specially that it was apparent from the petition itself, that the plaintiff was guilty of gross neglect, &c.

*J. A. Jones*, for appellants. As to the principles of equity

governing bills of this kind, see 2 Story, Eq. Sec. 887 and 888 ; Floyd v. Jayne, 7 Johns. Ch. R. 481 ; Story, Eq. Pl. Sec. 404 ; 8 Tex. R. 344 ; Bradshaw v. Davis, 12 Tex. R. 344.

*G. Lane*, for appellee. Were the facts stated sufficient? The bill shows that a judgment by default was entered against the defendant for his homestead, by a mistake which is set forth. There is no negligence on the part of the defendant ; no contumacious disregard of the process of the Court ; but one of those accidental mistakes which marks man from the cradle to the grave. ·

WHEELER, J. When this case was brought before us at a former Term, on appeal from the decision setting aside the judgment of the Court of a former Term, and awarding a new trial, this Court dismissed the appeal, on the ground that the judgment appealed from was not a final disposition of the case. At the same time the Court held, that after a final judgment disposing of the case, the judgment then appealed from might be revised. " That every interlocutory judgment could then " be brought under our revision (it was said) cannot be doubt- " ed." And again, " After a final judgment has been rend- " ered in this case, if the parties should be dissatisfied, or " aggrieved by such judgment, it (the judgment then appealed " from) can then be revised, and not before." (Gross et al v. McClaran, 8 Tex. R. 341, 342, 344.) But it is now sought to to be made a question, whether the Court will revise the judgment of the District Court setting aside the former judgment and granting a new trial ; and to bring the case within the rules which govern the granting of new trials during the Term at which the judgment was rendered. But the present is, evidently, very different from the ordinary case of the granting of a new trial. That is an order made during the progress of the cause, before final judgment, while the Court has the case under its control, and before any right has vested. This is an

original proceeding to vacate a judgment of the Court rend-ered at a former Term, when the Court has ceased to have any control of the case, and the judgment has become a vested right. In ordinary cases the Judge has a discretion to grant a new trial, whenever, in his opinion, wrong and injustice have been done by the verdict ; and it is upon this ground that Courts have refused to interfere to revise the granting of new trials. (Sweeney v. Jarvis, 6 Tex. R. 36.) No such discretion or power can be claimed for the Court, after the Term at which the final judgment was rendered. When it has been entered of record, and the Term has passed by, the decision is binding and conclusive on that and all other Courts of concur-rent power. This principle pervades not only our own, but all other systems of jurisprudence, and has become a rule of universal law, founded on the soundest policy. (3 Pet. R. 443 ; 1 Johns. Ch. R. 95.) The maxim of the Civil Law, *res judicata pro veritate accippitur*, is recognized and applied by our own. The judgment becomes a vested right, which can only be divested by a direct proceeding, and for sufficient le-gal cause, in some of the modes known to the law. Whatever opinion the Judge may then entertain of the legality or justice of the verdict and judgment, he is powerless to change it, un-less it be by a new proceeding or suit for that purpose. He can no more relieve against it, than he can divest any other right of a party without a suit instituted for that purpose, and conducted to judgment by due course of law. And from the very nature of the case, where there has been such proceeding, the party aggrieved must have the same right to have a revi-sion of the judgment upon the legal sufficiency of the cause of action, or complaint, in that, as in any other case. It could never be tolerated, that any Court should have an irresponsi-ble and irrevisable power to set aside and annul its judgments after the Term, for any cause which the Judge, in his discre-tion, might deem sufficient. Yet such would be the conse-quence of refusing to revise the decision in cases like the pres-

ent. It is a very different case from that of granting a new trial during the Term, while the record is *in fieri*, subject to judicial control. Whatever doubt there may be, whether we ought not to have revised the judgment on the former appeal, and whatever might be our decision if that question were now before us, there can be no doubt, that the decision then made ought to be deemed the law of this case in which it was made, and that, having refused to entertain the appeal and revise the judgment then, we cannot decline it now. Such is the inevitable conclusion from the opinions heretofore held in repeated decisions. (Stewart v. Jones, 9 Tex. R. 469 ; McKean v. Ziller, Id. 58 ; Bradshaw v. Davis, 12 Id. 344–5 ; Id. 556.)

The question then is, whether the Court erred in sustaining the petition, and proceeding thereupon to set aside the judgment of the former Term and grant a new trial. There can be no difficulty in the determination of this question. The grounds set forth in the petition for invoking this extraordinary interposition of the Court, in granting relief against the judgment of a former Term, are, that the petitioner and those under whom he claims, have had possession of the land in controversy under color of title, long enough to bar the plaintiff's right of action on their elder location and survey ; and his excuse for not making this his defence to the plaintiffs' action, is, that he had notified one Hill, from whom he derived his title, of the pendency of the suit ; that Hill had promised to attend to the suit and defend his title ; and that, relying on the promises of Hill, he gave no further attention to it ; that Hill failed to appear and defend the suit, and the consequence was, that the plaintiffs recovered a final judgment against him; of which he was not apprised in time to move for a new trial at that Term of the Court ; that he is informed by Hill, that he, Hill, intended to defend the suit ; but that he understood that the petitioner and one Clark were jointly sued and for several portions of the land embraced in the survey ; that he procured the services of an attorney and had the suit against

Goss v. McClaren.

Clark continued at that Term, and thought the case of the petitioner would be continued also, and "he gave himself no further trouble in regard to the matter;" and that Hill told him that he had no knowledge of the judgment against him, until after that Term of the Court; that he believes the statements of Hill to be true: finally, that the amount he will be able to recover of Hill, upon his warranty of title, will not be adequate to compensate him for the loss of the land. The petition was not filed until in the December following the June Term of the Court at which the judgment was rendered. It is sworn to by the petitioner; but is unsupported by the affidavit of Hill or by any other evidence whatever. As an excuse for the delay in filing the petition, it is averred that the petitioner at first intended to prosecute a writ of error to reverse the judgment, and took proceedings for that purpose; but was afterwards advised that he could not obtain a reversal, and abandoned his writ of error. Whereupon the petitioner prayed for and obtained an injunction; and the Court overruled exceptions to the legal sufficiency of the petition, and proceeded further, under the prayer for general relief, to set aside the former judgment and direct a new trial. To state such a case, would seem sufficiently to indicate the disposition which must be made of it. The case, shortly stated, is, that the petitioner might have successfully pleaded the Statute of Limitations to the plaintiffs' action, if he had seen proper to do so; but he did not, because a third person had promised to attend to it for him, and that person did not, because he did not take the trouble to inform himself what suit it was he was desired to defend. This is substantially the case and the whole case made by the petition. And upon this state of case, the judgment rendered at a former Term of the Court was set aside and a re-trial of the case directed. It would seem scarcely necessary to enter upon argument or the examination of authorities to show that such a proceeding was wholly unauthorized and unprecedented. Whether we refer to the prac-

tice of Courts of Chancery in directing new trials in cases at law, or the practice of this Court in similar cases, the action of the Court upon the case stated will appear equally unsupported by any principle of adjudication, or rule of practice, known to this or any other Court. Where the granting of new trials after the Term, has been sanctioned by this Court, it has been the exercise of an equitable jurisdiction, analogous to that exercised by Courts of Chancery in England and the Common Law States of the Union, in granting new trials in suits at law. (8 Tex. R. 343 ; 9 Id. 59.) That was by a bill of review or of the nature of a bill of review, usually called bills for a new trial. (2 Story's Eq. Sec. 887.) " As the " Courts of Equity (says Lord Redesdale,) will prevent the un- " fair use of an advantage in proceeding in a Court of ordina- " ry jurisdiction, gained by fraud or accident, they will also, if " the consequences of the advantage have been actually ob- " tained, restore the injured party to his rights. Upon this " ground there are many instances of bills to prevent the effect " of a judgment at law, and to obtain relief in equity, where it " was impossible by any means to have the matter properly " investigated in a Court of Law ; or where the matter might " be so investigated, to bring it again into a course of trial.— " Bills of the latter description, or (as they are usually called) " bills for a new trial, have not been of late years much coun- " tenanced. In general, it has been considered that the ground " for a bill to obtain a new trial after judgment in an action " at law, must be such as would be ground for a bill of review " of a decree in a Court of Equity upon discovery of new mat- " ter." (Mitf. Eq. Pl. 131 ; 2 Story's Eq. Juris. Sec. 888.)— " Anciently, (it was said by Chancellor Kent in Floyd v. " Jayne,) Courts of Equity exercised a familiar jurisdiction " over trials at law, and compelled the successful party to sub- " mit to a new trial, or to be perpetually enjoined from pro- " ceeding on his verdict. This relief was not granted, unless " the application was founded upon some clear case of fraud or

" injustice, or upon newly discovered evidence, which could
" not possibly have been used upon the first trial. But this
" practice has long since gone out of use, and such a jurisdic-
" tion is rarely exercised in modern times, because Courts of
" Law are now in the competent and liberal exercise of the
" power of granting new trials." (6 Johns. Ch. R. 479, 481.)
But when the jurisdiction was exercised most liberally in
Courts of Chancery, the Court would never interpose to grant
relief in this way, except where the party was prevented, with-
out his fault, from making his defence ; or upon newly discov-
ered evidence which could not possibly have been used upon
the trial. (Ib. 3 Daniell's Ch. Pl. and Pr. 1727 ; Story's Eq.
Pl. Sec. 412 et seq. ; Saunders v. Jennings, 2 J. J. Marsh. 513.)

Neither Courts of Chancery or of law ever interposed to
afford relief, by granting a new trial, where a party had per-
mitted a judgment to be recovered against him by his own
supineness and negligence. His want of knowledge of evi-
dence material to his defence, or of the recovery of a judgment
against him where he was served with process, or of any other
matter which it was material for him to know in order to
make his defence, or apply in time for a new trial, has never
been held to afford a party any excuse, if by the use of reason-
able diligence he might have known it. The question, in such
a case, said Lord Eldon, always is, not what the party knew,
but what, using reasonable diligence, he might have known.—
(Daniell Ch. Pl. and Pr., 1734 ; 13 Tex. R. 445.) It cannot
be doubted, that by the use of reasonable diligence, the peti-
tioner might have known whether the suit pending against
him, for the recovery of the premises on which he resided, was
defended or not ; or whether judgment was likely to be recov-
ered or had been recovered against him, whereby he was lia-
ble to be ejected from his possessions. It would seem that a
man of any prudence or discretion would have acquainted him-
self with such a state of case ; if, indeed, he had any confi-
dence in his title or his ability to make any successful defence

to the action. But it is unnecessary to discuss the merits of the petitioner's case. It is quite too clear for controversy, or question, that his petition did not present a case which would have entitled him to equitable relief, upon any principle which has ever been recognized in Courts of Chancery. It is equally clear that he was not entitled to have the judgment of a former Term set aside and a new trial granted, upon any principle or rule of practice recognized by this Court. Thus, in Cook v. Garza we held it to be perfectly clear and well settled, that, to entitle a party to a new trial, applied for upon equitable grounds after the Term, he must show sufficient matter to have entitled him to a new trial if applied for at the Term, and a sufficient legal excuse for not having then made his application. (13 Tex. R. 431, 444.) The same principle was recognized in Spencer v. Kinnard, (12 Id. 180,) and Miller v. Hall, (Id. 556.) In Mussina v. Moore, (13 Tex. 7,) and Kitchen v. Crawford, (Id. 516,) the right of the party to a new trial was maintained on the ground, that where the defendant had been deprived of the opportunity of making his defence, without any fault on his part; he not having had personal service or actual notice of the suit; the Statute (Dig. Art. 783,) gave him the right to a hearing, and a re-trial of the case. But in the present case, the defendant had notice by personal service, and an opportunity afforded to defend the suit; but he did not, because he expected his warrantor to defend, and the latter did not, because he expected his attorney to attend to the matter. If the judgments of Courts were liable to be set aside, and new trials granted on such grounds as these, there would, indeed, never be an end of litigation. It has been well said, that, "If mistakes in practice, or inadvertence furnished reason for a new trial, it would encourage litigation and reward ignorance and carelessness at the expense of the other party." (6 Rep. 9.) And, therefore, the law in such cases wisely acts upon the maxim, *interest reipublicae ut sit finis litium*—it is for the public good that there be an end of litigation.

Goss v. McClaren.

" After a recovery by process of law " (says Lord Kenyon, 7 T. R. 269,) " there must be an end of litigation ; if it were otherwise, there would be no security for any person," (Ib.) and great oppression might be done under color and pretence of law, (5 Rep. 9.) If a new trial had been asked upon these grounds at the Term, no one would be heard to contend that they were legally sufficient to warrant the Court in granting it. Can it be supposed that by permitting the Term of the Court to pass by without making the application, the party was entitled to have it more favorably entertained, and considered ; or, that a new trial should then be granted upon an original proceeding, for causes for which it could not legally have been granted, if timely application had been made ? If there be anything which is perfectly clear, beyond all question, on principle and authority, it is the opposite of such a supposition. There can be no presumption in this case, as there might be where a new trial was granted during the Term, (6 Tex. R. 43,) of the existence of any fact not appearing by the petition to support the action of the Court : for the facts upon which the Court acted could only appear by the petition ; the Court could only act upon the case therein stated. That manifestly was not sufficient to entitle the petitioner to the relief sought ; or to any relief, upon any principle, on which Courts of Chancery proceed in granting relief against judgments at law, or by which Courts of law themselves are governed in the granting of new trials. The Court therefore erred in overruling the exceptions to the petition ; and because the Court had no authority, upon the case stated, to set aside the former judgment and direct a new trial, the judgment in that regard must be reversed, and annulled, and the petition and proceeding thereon dismissed.

Reversed and dismissed.