## A. M. McCorkle v. Sim Everett.

### Decided June 9, 1897.

**1. New Trial After Term—Mistake.**

Where by mistake, without defendant's fault, a case was tried under an agreement that one A. R. was the common source of title (there having been separate grants to two persons of that name, and the one under whom plaintiff had showed title not being the grantee of the premises in controversy, under whom defendant held), it was proper to grant a new trial, on petition of defendant at a subsequent term, and upon such new trial to render judgment for such original defendant.

**2. Same—Procedure.**

It was proper, after having granted the new trial, to docket the proceeding as in the original cause, and in the trial thereof to impose upon plaintiff the burden of proof.

APPEAL from McLennan.   Tried below before Hon. L. W. GOODRICH.

*William M. Flournoy,* for appellant.—1. The party plaintiff in the bill of review or motion having been in court by personal service for about seven years, was not entitled to the relief sought under our statute, and all allegations of fraud having been waived, and the allegation showing that it was by his own laches that he was placed in the condition alleged, the demurrer should have been sustained by the court and the cause dismissed.   Rev. Stats., art. 1375; Seguin v. Maverick, 24 Texas, 526-538; Gross v. McClaran, 8 Texas, 344; Burnley v. Rice, 21 Texas, 180; Vardeman v. Edwards, 21 Texas, 737; Harn v. Phelps, 65 Texas, 592.

2.   On the trial of said cause the court erred in holding that said McCorkle occupied the position of plaintiff in the suit and requiring McCorkle to introduce his evidence of title.   Marsalis v. Oglesby, 2 Willson C. C., sec. 260.

3.   The court erred in rendering judgment against said A. M. McCorkle for the land in controversy.

*J. B. Scarborough,* for appellee.

COLLARD, ASSOCIATE JUSTICE.—This is a suit brought by the appellee, Sim Everett, against appellant, A. M. McCorkle, for a new trial after the term in cause No. 4777, wherein the parties plaintiff and defendant were reversed, McCorkle being plaintiff in the old original suit and Everett being defendant.   This suit, or application for new trial, was filed in the same court, and before the same trial judge, April 13, 1895.

The petition shows that the original was an ordinary action of trespass to try title, and judgment was rendered against plaintiff herein, Sim Everett, at the January term, 1895, and motion for new trial was overruled March 20, 1895, prior to adjournment of the court on the 28th day of March.

Plaintiff alleges that by mistake of fact and law on the part of his counsel, and on the part of counsel for plaintiff in original suit, the following agreement was made by counsel for both parties:

"We also agree that Abraham Richardson is dead and that Isaac Richardson is his only heir at law, and that Abraham Richardson died prior to date of conveyance of I. Richardson to defendant, and that Abraham Richardson is common source of title.

"Plaintiff avers that the agreement was made without his authority and was based on a mistake, and was greatly prejudicial to defendant.

"Plaintiff attaches hereto and makes a part of this petition a map clearly and definitely showing pre-emption survey of A. Richardson, Sr., and A. Richardson, Jr.; and alleges that defendant McCorkle has no title whatever, nor ever had, to the pre-emption survey of Abraham Richardson, Sr., but plaintiff is advised and believes that he has title to pre-emption survey of Abraham Richardson, Jr.; that Abraham Richardson, the father of Abraham Richardson, Jr., settled on the pre-emption survey

of 320 acres involved in this litigation, in 1852, as a homestead, and had the same surveyed as such, and lived thereon with his family until his death in 1854, and that his family continued to reside thereon after his death for a number of years; that his estate was administered on in the probate court of McLennan County, probate No. 35, at the January term of said court, 1855, by his son Isaac Richardson, as administrator, and that this homestead pre-emption was inventoried as a part of his estate; that subsequent to his death it was found that all land in that immediate vicinity was covered by the M. Rabago survey—Isaac Richardson bought from General Thomas Harrison the Rabago claim on the land in controversy, together with other lands; that said Isaac Richardson by proper conveyance purchased the interest of all the heirs of A. Richardson, Sr., deceased, to the land in controversy, and became the sole owner thereof in 1881, and by warranty deed conveyed the same to this plaintiff, who has owned and occupied, enjoyed, and paid all taxes thereon to this time.

"Plaintiff alleges that defendant's title is to the pre-emption survey of A. Richardson, Jr.—is fully shown by said map to be south of survey in litigation; that A. Richardson, Jr., now deceased, did locate the pre-emption survey in 1854, as shown by said map, lying south of the Renan survey; that said survey passed to plaintiff in said cause, A. M. McCorkle, by the following claim of title put in evidence by plaintiff in this, suit 4777, and the only proof of title made by him, upon which title he recovered, to wit: Bond for title by Abraham Richardson to Reuben Slaughter, June 26, 1856, in which he binds himself to convey 'my pre-emption claim for 320 acres of land situate on the North Bosque, about one mile below H. Everett survey.' If the court will observe the relative localities of A. Richardson survey and that of A. Richardson, Jr., you will see it to be about one mile below where the A. Richardson, Sr., survey and the one in controversy is, adjoining and west of the H. Everett.

"In December, 1856, Abraham Richardson, Jr., made deed to Slaughter, reciting payment and describing the land as follows: 'The survey of land made for me as pre-emption in February, 1854, situated on North Bosque and adjoining a survey made for my father, A. Richardson, deceased, containing 318 acres more or less.'

"In December, 1856, Slaughter conveys to Granbury and describes as follows: 'My·claim, right, and title in and to a certain tract of land containing 318 acres lying in said county and State, and being the same transferred to me by A. Richardson in the month of June last, and the same tract which was surveyed for him in February, 1854, under the pre-emption law then in force, and occupied by him for some time.'

"On January 14, 1860, Granbury conveys to Thomas Harrison, with following description: 'Situated in McLennan County on the North Bosque, and known as the pre-emption survey of Abraham Richardson, sold by said Richardson to Reuben Slaughter, and by said Slaughter to me.' Then the deed sets out the field notes of the A. Richardson, Sr., survey.

"On the 16th day of October, 1878, Harrison conveys to A. M. Mc-

Corkle, with the following description: 'The pre-emption survey of Abraham Richardson, sold by him to Reuben Slaughter, and by Slaughter to Granberry, who conveyed to me.' Then reciting the field notes of the land in controversy.

"Plaintiff alleges that the field notes inserted in the two last named conveyances were inserted by mistake. That the intention of the parties was to insert the field notes of the A. Richardson, Jr., survey, a true and correct copy of which is hereto attached and made a part hereof; also is attached hereto a true copy of the field notes of the A. Richardson, Sr., survey.

"Plaintiff alleges that defendant A. M. McCorkle is in possession of and claiming the A. Richardson, Jr., survey, with no other title than that under which he claims this tract.

"Plaintiff alleges that from this statement, which he is ready to verify, it is perfectly clear that plaintiff owns the 320 acres pre-emption of A. Richardson, Sr., and that defendant owns the 320 acres pre-emption of A. Richardson, Jr.

"Plaintiff alleges that the two men having pre-emption surveys contiguous, or nearly so, to each other, and that this plaintiff being ignorant of the form of the law, and knowing nothing about common source of title, and knowing that he owned the A. Richardson survey, and not knowing that the two surveys were of the same name, could not advise his counsel; and that defendant (?) alleges that both counsel for plaintiff and defendant were misled and made the same mistake of fact. That while A. Richardson is a common source of title for both tracts, they are different ment, and this fact was not known to this defendant (?) nor his counsel until after this cause had been finally disposed of.

"Plaintiff alleges that at the time said agreement as to common source of title was made, A. Richardson, Sr., was dead and had been dead since 1854; that A. Richardson, Jr., was not dead, but has died since that date; that said agreement was made with reference to A. Richardson, Sr.; that the fact that A. Richardson, Jr., was living was known to plaintiff and his counsel, but was unknown to defendant and his counsel in said cause; that this plaintiff, who was defendant in said suit, knew nothing of said agreement nor of common source of title. . He alleges that said agreement was made with the intent on the part of plaintiff's counsel and plaintiff to mislead defendant's counsel, and they were so misled by said agreement.

"Plaintiff further alleges that on said trial plaintiff McCorkle did not trace his title to the common source agreed on, A. Richardson, Sr., and therefore did not by sufficient evidence of title so make out his case as to become entitled to payment.

"Plaintiff alleges that without fault, neglect, or laches on his part, by the judgment of this court he has been deprived of his land; that the result came about through the mistake of law and fact by both counsel for plaintiff and defendant without fault so far as defendant is concerned."

It is then shown by the petition that the case was not appealed nor prepared for appeal, and that he now has no means of appealing and remedy-

ing the wrong done. It is also alleged that no one else but defendant Mc-Corkle claims the junior Richardson pre-emption. It is also averred that the trial court was misled and rendered judgment against plaintiffs herein. He asks for a new trial.

Isaac Richardson's affidavit to the petition shows that he is the son of Abraham, deceased, and that Abraham Richardson, Jr., was his brother, but was deceased, and that the facts alleged by plaintiff as to location of said two surveys of land, the death of his father, and with reference to the title to the said two surveys, are, within his knowledge true; that he administered on his father's estate in 1855, and that he never heard of McCorkle asserting claim or title to the land in controversy until this suit was filed. The whole application for new trial is sworn to by applicant Sim Everett.

The field notes of the two Richardson pre-emption surveys are attached to the petition, the same showing that the survey made for the senior Richardson contained 318 1-2 acres of land, and that of the junior Richardson 320 acres of land. The field notes are of different surveys.

Defendant McCorkle filed general and special demurrers to the application, general denial, and plea of res adjudicata.

On the 14th day of May, 1895, the trial court overruled "the demurrer" to the petition, and ordered the style of the case to be changed so as to make Sim Everett defendant and A. M. McCorkle plaintiff, and restoring the original number, 4777, of the case on the docket.

On the 13th day of October the court overruled the special demurrers to the petition. October 10, 1895, the death of Sim Everett was suggested, and the heirs of deceased defendant appeared to prosecute the suit, adopting the pleadings of defendant, the style of the suit having been changed, pleaded not guilty and the statute of limitation of ten years, and prayed to be quieted in possession and for decree vesting title in them.

On the 12th day of May, 1896, the court heard the application to set aside the former judgment and for new trial in suit No. 4777, and "after hearing the motion and pleadings of both parties and the evidence thereon, and the argument of the parties" granted the motion, vacated and set aside the former judgment, ordering that the cause stand for trial as between McCorkle as plaintiff and the heirs of Everett as defendants, and thereupon the parties announced ready for trial, and, a jury being waived, the case was tried by the court, who rendered judgment for defendants, the heirs of Everett, vesting title to the land in suit in them, from which plaintiff McCorkle has appealed.

The trial court filed the following conclusions of fact and law at the request of counsel:

"I find that in a suit instituted in this court in 1888 by A. M. McCorkle v. Sim Everett, No. 4777, seeking to recover a tract of 320 acres of land, the headright of Abraham Richardson, Sr., a judgment was recovered by plaintiff at the January term, 1895; motion for a new trial was filed and overruled, and notice of appeal given, but no statement of facts or record was prepared for appeal; afterwards, to wit, on the 13th day of

April, at the April term, 1895, Sim Everett, defendant in the first suit, filed a suit for a new trial upon the grounds stated in his petition—suit No. 6972.

"I find that there were two Abraham Richardsons, senior and junior, father and son, both within the boundaries of the Rabago eleven-league grant. I find that Abraham Richardson, senior, died in 1854, and that Abraham Richardson, junior, died in 1895. I find that upon the trial counsel for both sides made the following agreement, which is filed with the papers of the case, to wit: 'We also agree that Abraham Richardson is dead, and that Isaac Richardson is his only heir at law; and that Abraham Richardson died prior to the date of the conveyance of Isaac Richardson to defendant, and that Abraham Richardson is the common source of title.' This is signed by counsel for both sides—this agreement being filed and used as evidence in the first case above mentioned. I find that Abraham Richardson, junior, conveyed the title to his pre-emption by deed dated June the 10th, 1856, to Reuben Slaughter; that Reuben Slaughter afterwards conveyed the same land by the same field notes to H. B. Grandberry, on the 16th day of December, 1856; that afterwards Grandberry conveyed to Thomas Harrison by deed dated 14th day of January, 1860, and that Thomas Harrison, by deed dated October 16, 1878, conveyed to A. M. McCorkle, in which deed, after describing the land by using the field notes of the A. Richardson, Sr., survey, he described the land as the same conveyed by A. Richardson to Slaughter, by Slaughter to Grandbury, and by Grandbury to Harrison, being the Abraham Richardson, Jr., pre-emption survey. I find that the agreement of counsel that Abraham Richardson was the common source of title, and that Isaac Richardson was the only heir at law, and the confusion in the deed made by Harrison misled both counsel and the court; neither being aware at the time that there were two men of the name of Abraham Richardson, senior and junior, and that both this confusion and mistake of fact misled both counsel and the court. I further find, that it now appears by indisputable evidence that the land conveyed by Isaac Richardson to Sim Everett conveyed in fact and in law an interest to the Abraham Richardson, Sr., pre-emption survey, and in view of the agreement of the parties as to heirship, I find that Sim Everett became invested with full and absolute title to the land here in controversy. I further find that Isaac Richardson, after the death of his father in 1854, went into possession of said tract and held possession of same continuously until the date of his conveyance to Sim Everett. I further find, that although it appeared that A. McCorkle lives in McLennan County, he did not appear on either trial, nor offer himself as a witness to any point in this case; and I further find that he is the only survivor who took part in said transaction by which he claims title became vested in him. I further find that said McCorkle is in possession of and claims title to the A. Richardson, Jr., survey under his deed from Harrison, and that the insertion of the field notes of the A. Richardson, Sr., survey in said deed was by mistake, and is controlled by the call in said deed as the same land sold by

A. Richardson, Jr., to Slaughter, and by Slaughter to Grandbury, and by Grandbury to Harrison.

"Conclusions of Law.—1. I find that the first judgment having been rendered by mistake, without fault of Sim Everett, should be set aside.

"2. I find further on the trial of the case that said Sim Everett is entitled to judgment for the land and for costs."

*Conclusions of fact found by this court.*—1. The agreement of counsel filed in cause 4777 is as stated in the application for new trial and as found by the trial judge.

2. Judgment was rendered in said cause 4777, as alleged by Everett, on the 8th day of January, 1895.

3. On the 26th day of June, 1856, A. Richardson executed a bond for title to Reuben Slaughter, conveying his "pre-emption claim for 320 acres of land situated on North Bosque about one mile below the H. Everett, with improvements thereon."

4. A. Richardson, on the 10th of June, 1856, conveyed by deed to said Slaughter the same survey of land made for him as a pre-emption in February, 1854, situated on North Bosque, and joining survey made for his father, A. Richardson, then at date of deed deceased, containing 318 acres.

5. R. G. Slaughter, the 16th of December, 1856, conveyed to H. B. Grandbury his right and title to the same 318 acres—the same conveyed to him by A. Richardson in the month of June—previously surveyed for A. Richardson in February, 1854, described further as adjoining the survey made for A. Richardson, deceased.

6. On the 14th day of January, 1860, H. B. Grandbury conveyed to Thomas Harrison land described as situated in McLennan County, on North Bosque, and known as the pre-emption survey of A. Richardson, sold by Abraham Richardson (junior) to Reuben G. Slaughter, and by Slaughter to Grandbury; the deed uses the field notes alleged by Everett to be the field notes of the pre-emption of the elder A. Richardson.

7. On the 16th day of October, 1878, Thomas Harrison conveyed to A. M. McCorkle land with the following description: "The pre-emption survey of Abraham Richardson, sold by him to Reuben Slaughter, and by Slaughter to Grandbury, who conveyed to me," with field notes of last above deed.

This was the title read in evidence by plaintiff McCorkle.

1. Defendant Everett put in evidence map showing the relative position of the two pre-emption surveys of the Richardsons, and other surveys.

2. The original field notes of the survey made for Abraham Richardson, of date November 18, 1853, as taken from the county surveyor's records, describing the land in controversy.

3. Field notes of survey of 320 acres of land made for A. Richardson, Jr., "being the land to which he is entitled by virtue of settlement thereon under the law granting pre-emptions to all actual settlers, survey made on the 9th of February, 1854, describing by metes and bounds the land

defendant Everett alleges to be the pre-emption of the junior Richardson.

4.  Deed from Isaac Richardson to Sim Everett, dated July 28, 1881, conveying to Everett the land in controversy, the pre-emption survey made for the elder A. Richardson.

5.  It was in proof that Abraham Richardson, Sr., was the father of Isaac Richardson; that the father died in 1854, on his pre-emption survey—the land in controversy. Isaac had a brother, Abraham Richardson, who died in 1895. Isaac administered on his father's estate—inventoried the land in suit as part of the estate; that there were two surveys in the name of Abraham Richardson: one for the father, and the other for the son. The father lived on his until his death—that is, the survey in controversy. Isaac Richardson took possession of it after his father's death, and occupied it until he sold it to defendant Everett, in 1881. Isaac Richardson testifies that his brother, Abraham Richardson, sold his land to Reuben Slaughter, and Slaughter sold to Grandbury, and he to Thomas Harrison, and Harrison to plaintiff McCorkle. This testimony is true, as shown by the conveyances in evidence.

The foregoing are the facts and our conclusions therefrom, as proved on the trial after the new trial was granted and the original cause of McCorkle v. Everett was reinstated on the docket. The facts in evidence on the application for a new trial, and on which the new trial was granted, are not in the record, the parties being content with the court's finding of fact therein. We therefore find that the conclusions of fact filed by the trial judge, as proved on the trial of the motion for new trial, are true.

*Opinion.*—The court below did not err in granting the new trial, and the applicant for new trial had not by his laches waived his right to ask for the new trial under the circumstances shown.

It is evident that there was a mistake in the construction placed on the agreement of counsel in the original cause as to common source of title to the land in suit. This mistake was made by the court that rendered the original judgment, as well as by counsel. Abraham Richardson was in fact the source of Everett's title, and Abraham Richardson was the source of McCorkle's title to the land owned by him; but the latter Richardson was not the source of Everett's title. Abraham Richardson, Sr., was the source of Everett's title, and the younger Richardson was the source of McCorkle's title, and he deraigned title from this source. He did not show title from the elder Richardson, and hence the parties did not have common source of title. The mistake arose from the fact that there were two Abraham Richardsons, not distinguished by the parties at the time the agreement of counsel was made and filed. Counsel for the parties and the court rendering the first judgment fell into the same error as to identity of the two men, who owned each a separate survey in the same name. McCorkle, the plaintiff, showed title from Abraham Richardson; this proof with the agreement only in appearance connected him with the person who owned the land in suit. In fact, it did not connect him with such owner. The identity of names caused the confusion

and the mistake. Everett furnished the court sufficient and satisfactory excuse for the mistake, and for not discovering it sooner, and the lower court was justified by the facts in granting the new trial. Hough v. Hammond, 36 Texas, 657; Burnley v. Rice, 21 Texas, 171; Plummer v. Power, 29 Texas, 7; Goss v. McClaren, 17 Texas, 107; Fisk v. Miller, 20 Texas, 578; Vardeman v. Edwards, 21 Texas, 740; Harrison v. Musgrave, 72 Texas, 19.

There was equity in the application for the new trial. The judgment sought to be set aside was unjust, contrary to the rights of the parties, and was rendered by mistake, for which Everett was without fault, and he was guilty of no laches that could defeat his right to a new trial. He showed an equitable right to a new trial.

The court did not err in changing the style of the case to that of the original suit, nor on the trial after the new trial was granted in imposing the burden of proof upon McCorkle, the plaintiff.

After the new trial was granted the case stood as though it had never been tried, and McCorkle had the burden of proof to show title. He exhibited no title, but on the contrary it was conclusively shown that he had no title to the land he had sued to recover.

The burden of proof was upon the original defendant to show cause for a new trial, but after it was granted the burden was upon the plaintiff.

Plaintiff exhibited no title of any kind to the land in suit. Defendant had such title as authorized the court to render judgment for him, vesting in him the title as against plaintiff. There was no error in the judgment of the court below, and it is affirmed.

*Affirmed.*