Joseph N. ROSSER, Appellant,

v.

Jerry HANKS, Appellee.

No. 6569.

Court of Civil Appeals of Texas.

Beaumont.

May 9, 1963.

Rehearing Denied June 26, 1963.

Fred A. Carver, Beaumont, for appellant.

A. A. DeLee, Port Arthur, and on motion for rehearing Stephenson, Stephenson & Thompson, Orange, for appellee.

HIGHTOWER, Chief Justice.

This is an appeal from a judgment of the district court sustaining appellee's petition for Bill of Review, setting aside a default judgment previously entered against him and entering judgment in appellee's

favor on his cross-action in the sum of $1,000.00 against appellant.

The default judgment was the result of a suit brought upon an oral contract for services rendered by appellant for appellee. In that suit service of process was had upon appellee on April 24, 1961. The first Monday after the expiration of 20 days fell upon May 16, 1961. On May 25, 1961, no answer having been filed by appellee, a default judgment was taken by appellant in the amount of $14,400.00. On May 26, 1961, appellee belatedly filed his answer. Thereafter, on July 19, 1961, appellee filed his petition for Bill of Review to set aside the default judgment. On July 28, 1961, the court entertained a hearing on the petition for Bill of Review and on September 15th of said year said court entered its judgment setting aside the default judgment previously entered on May 25, 1961, as aforesaid. Trial on the merits was had February 20, 1962, and on March 1, 1962, the court reaffirmed its judgment of September 15th and rendered judgment in favor of appellee on its cross-action as aforesaid.

■ The sole question posed is whether or not "accident or mistake" prevented appellee from timely filing answer prior to the default judgment. On such question, we quote the Supreme Court in Johnson et al. v. Templeton, Adm'r., 60 Tex. 238:

> "This court has on more than one occasion laid down with considerable strictness the rules which should govern the action of the district court in cases where a new trial is sought after the expiration of the term.

> "Where the final judgment of a court of competent jurisdiction has been once solemnly pronounced, it ought not to be lightly disturbed. It is alike the interest of individual suitors and of the public at large that there should be at some period an end put to litigation.

> "For these, and many other good reasons, though the power of courts of equity to restrain final judgments and to entertain bills for new trial in such cases is well established, it never has at any time been regarded as a favorite one with chancellors.

> "Such bills seeking relief from final judgments, solemnly rendered in the due and ordinary course of the administration of justice by courts of competent jurisdiction, are always watched by courts of equity with extreme jealousy, and the grounds upon which interference will be allowed are, confessedly, narrow and restricted.

> "It will not be sufficient to show that injustice has been done by the judgment sought to be enjoined. *It must further distinctly and clearly appear that this result was not caused by any inattention or negligence on the part of the person aggrieved,* and he must, among other matters, show a clear case of diligence and of merit to obtain the interference of a court of equity in his behalf at such a stage of the case. High on Inj. (2d ed.), secs. 112, 113; Duncan v. Lyon, 3 Johns.Ch., 356; Brown v. Hurd, 56 Ill., 317. * * *" (Emphasis added.)

The following pertinent principles of law applicable to proceedings of this nature are from 4 McDonald, Tex.Civ.Prac. with references to a wealth of cases there collated supporting the same:

> " 'Mistake', as the term is here used, means a mutual error of the parties, or a mistake of the complaint coupled with an act of the opponent which brought it about, relating to matters of fact incident to the trial of the former action. 'Accident' implies a similar joint responsibility or freedom from fault, by both parties through which, by mischance, the complainant failed to urge his position in the former action. [pp. 1495, 1496, note 17.] * * * An injustice in the

former decree is not enough, without more: the party's failure to present his claim or defense must not have resulted from neglect of himself, his agent, or his counsel. [p. 1498, note 28.] The standard of care is 'such as prudent and careful men would ordinarily use in their own cases of equal importance'. [p. 1498, note 29.]" And see 34 Tex.Jur.2d, Judgments, Sec. 188.

The facts upon which appellee relies for establishing a mistake within the meaning of these principles of law are:

He was working as a pharmacist on the day of the service of citation. On that day, immediately after having been served the citation, he telephoned Mr. Thomas, an attorney at law and business associate of his, and informed him of the fact. Mr. Thomas advised him to bring the papers to his office as soon as possible so that he might discuss the matter with him. He did not do this. He placed these papers on his prescription counter or desk where they remained for three days, after which he never saw them again. The substance of appellee's testimony is that he simply misplaced them and thereafter forgot them. It is very doubtful from his testimony that he even read the citation. However, although he realized that he had only a limited time in which to file answer in the matter, he stated that he was of the opinion that he had more time than it turned out that he did have. On the 24th day of May, 1961, Mr. Carver, attorney for appellant, chanced to meet Mr. Thomas in the law offices of a fellow attorney and Mr. Carver advised Mr. Thomas that he was getting ready to take a default judgment against appellee. Whereupon Mr. Thomas advised Mr. Carver that he did not represent appellee but, nevertheless, Mr. Thomas advised appellee on the evening of the same day that a default judgment was about to be taken against him and that he had better employ an attorney to file an answer in the case. Whereupon Mr. DeLee entered the picture on the 25th day of May, 1961, as attorney for appellee for such purpose. Late in the afternoon of that day he consulted with appellee and phoned the district clerk's office and was advised that no judgment had yet been taken in the matter. Upon appellee's return to his office the next morning to sign the answer which Mr. DeLee had prepared, again via telephone these parties were advised by the district clerk's office that no judgment had been taken. Upon delivery and filing of this answer in the district clerk's office the same morning appellee was again advised that no judgment had been taken in the matter.

These latter facts relating to the information received by appellee from the district clerk's office would perhaps be sufficient to establish that appellee had not failed to use due diligence in availing himself of all adequate remedies at law to prevent the judgment from becoming final. That is to say, that in reliance upon such information, he was justified in not having timely filed motion for new trial prior to his petition for Bill of Review. Nevertheless, such facts do not excuse his personal negligence of failing to timely file answer in the first instance. There is no way this court can distort his acts of negligence into that of "mistake or accident" within the meaning of the principles of law hereinabove stated.

■ Appellee has much to say in his brief about the fact that upon the very day he prepared appellee's answer in the original proceedings that he also mailed appellant's attorney, Mr. Carver, a copy of the same. It is stipulated in the record that Mr. Carver received said copy May 26th, which was the day following the taking of the default judgment on May 25th, as aforesaid. We infer from his brief that he is of the opinion that Mr. Carver, therefore, owed some duty to have informed appellee of the default judgment in order that appellee might have thereby timely filed a motion for new trial. Such

contention is without merit. Banks **v.** Crawford, Tex.Civ.App., 330 S.W.2d 243.

▆ Although the record unquestionably reflects that a grave injustice will result to appellee should the judgment of the trial court setting aside the default judgment taken against him not be sustained by this court, we are of the opinion that the principles of law, as quoted hereinabove, leave us no alternative.

Therefore, we reluctantly modify the judgment of the trial court wherein it sets aside the default judgment in favor of appellant. However, that portion of the trial court's judgment allowing appellee recovery of $1,000.00 on his cross-action against appellant is affirmed. As modified, the judgment of the trial court is affirmed.

Modified and affirmed.

## ON MOTION FOR REHEARING

McNEILL, Justice.

I respectfully dissent. The facts show that the default judgment was neither the result of intentional failure to answer the suit nor the result of conscious indifference on the part of appellee. Our court held in Iley v. Reynolds, Tex.Civ.App., 319 S. W.2d 194, that if neither of these situations existed a motion for new trial should be granted the defaulting party. The opinion in the present case sets forth the facts. It is seen therefrom that appellee when served with citation promptly called an attorney who advised him to bring the papers to his office; but appellee misplaced the citation served on him. He explained the reason that he did not act more promptly was because he thought he had more time than he did to answer the suit. The trial court ruled in his favor. All inferences must, therefore, be indulged in his behalf. Lyons v. Paul, Tex.Civ.App., 321 S.W.2d 944. Thus the facts show some excuse, though not necessarily a good one, for

failure to file answer. Under such circumstances a motion for new trial should be granted. On this subject the Supreme Court in Craddock v. Sunshine Bus Lines, 134 Tex. 388, 133 S.W.2d 124, quotes approvingly from Dowell v. Winters, 20 Tex. 793, as follows (133 S.W.2d p. 125):

> "But where the trial has not been delayed, and there is an affidavit of merits, we think the default should be set aside and the answer received, upon some showing by way of excuse, for the failure to plead in time. * *"

Commenting upon this quotation, the Court in Craddock said:

> "Some excuse, but not necessarily a good excuse, was the test there prescribed. When the opinion in that case is analyzed, it seems clear that the absence of an intentional failure to answer rather than a real excuse for not answering was the controlling fact."

The cases just quoted from each involved error in the trial court's refusal to grant a defaulting defendant's motion for new trial. While no motion for new trial was filed in the present case, there was just reason and legal excuse for failure to do so. Appellee was diligent in ascertaining from the district clerk whether default had been taken against him. He was entitled to rely upon the information furnished him. He was not given the correct information. Because of this, he did not learn of the judgment until too late to file motion for new trial. In equity he is, therefore, entitled to the presumption that had he been correctly informed, a motion for new trial would have been promptly filed and granted. Craddock v. Sunshine Bus Lines, supra; Iley v. Reynolds, supra.

A bill of review against a default judgment should be granted if the grounds therein would have required the granting of a motion for a new trial, had it been

presented at the time and in the manner provided by law. Pearl Assur. Co. v. Williams, Tex.Civ.App., 167 S.W.2d 808 (812); 17 Tex.Jur. 27.

I would grant the motion for rehearing and affirm the judgment of the trial court.