Jerry HANKS, Petitioner,

v.

Joseph N. ROSSER, Respondent.

No. A–9767.

Supreme Court of Texas.

April 22, 1964.

Stephenson, Stephenson & Thompson, Jim I. Graves, with above firm, Orange, A. A. DeLee, Port Arthur, for petitioner.

Fred A. Carver, Beaumont, for respondent.

GREENHILL, Justice.

Joseph Rosser brought suit against Jerry Hanks for services which he alleged he had rendered to Hanks and for which Hanks had agreed to pay him. Hanks was served with process on April 24, 1961. Appearance day was May 16, 1961. Hanks failed to file an answer by May 16, 1961; and on May 25, 1961, Rosser took a default judgment. Hanks is seeking equitable relief from that default judgment. The district court set aside the default judgment, and entered judgment in Hanks' favor on a cross-action. The Court of Civil Appeals modified the lower court judgment, by reinstating the default judgment but affirming that portion of the judgment allowing Hanks recovery on his cross-action. 369 S.W.2d 643.

Hanks was a full-time independent druggist. He had a relief druggist only once or twice a week. On the same day that Hanks was served with process, he called an attorney, Thomas, and told him of the lawsuit. Thomas advised Hanks to bring the papers to his office and that he would advise him what to do after reading them. Hanks did not go to Thomas' office, and Thomas never saw the papers. Hanks misplaced the citation. He said they were placed on his prescription counter with his prescriptions and that he just lost them. He never did find them. He thought he had more time in which to answer. As a result, he did not file an answer in time.

Sometime between the day of service of citation and appearance day, Rosser's attorney conversed about the suit with Thomas, the attorney with whom Hanks had talked. On May 24, 1961, after appearance day, Rosser's attorney again saw Thomas and told him that appearance day had passed without an answer having been filed by Hanks, and that a default judgment was going to be taken. Thomas explained that he did not represent Hanks, but would inform Hanks of the matter. Thomas called Hanks that same afternoon, and told him that he had better file an answer to avoid having a default judgment taken against him. Thomas declined to represent Hanks, and recommended another attorney, A. A. DeLee, whose office was in Port Arthur. Hanks telephoned DeLee and made an appointment for the next morning, May 25, 1961. In their meeting in Port Arthur on the morning of May 25, Hanks explained the situation. DeLee immediately telephoned the district clerk's office in Beaumont and was informed by the clerk that while the suit was ripe for action, no judg-

ment had yet been taken; that nothing had been done except the filing of the petition.

DeLee prepared an answer, which Hanks signed about 4:15 that afternoon. DeLee again called the district clerk, and was informed that still no judgment had been taken. It was too late to drive from Port Arthur to Beaumont and file the answer before the clerk's office would close for the day; so the answer was not filed until 9:18 the next morning. Again, at the time he filed the answer DeLee asked if a judgment had been taken in the case, and "the person [asked] went back and picked up a file and said, 'No'." He also testified that at this time he "was advised by the clerk there that nothing had been done. [So] I filed the answer." DeLee did not personally examine the file, the docket sheet, or the minutes of the district clerk. In fact, the judge's civil docket sheet showed that a default judgment had been taken May 25, 1961, and the judgment had been entered on the court minutes that same day.

DeLee sent a copy of the answer to Rosser's attorney, who stipulated that he received his copy May 26, 1961, the day it was filed. Rosser's counsel did not inform DeLee that judgment had been taken. Neither party took any further action until about July 18, 1961, when Rosser had an execution on the default judgment issued by the district court. The execution was delivered to the sheriff for proper levy and sale of Hanks' property, all of his interest in the drug store and its contents. This was the first that Hanks or his attorney heard of the May 25, 1961, default judgment.

Hanks' counsel promptly sought equitable relief. He brought to the district court a plea for equitable relief based on contentions that he was not negligent in failing to file timely answer to Rosser's petition; that he did not file a motion for new trial only because he relied on false information given to him by the district clerk, that he had a meritorious defense to the lawsuit, and that the granting of this equitable relief would be in keeping with justice and would cause

no undue delay or prejudice to Rosser. The district court agreed with his position and, setting aside the default judgment, granted him a trial on the merits.

In the trial on the merits, Hanks' defense was sustained so that Rosser recovered nothing, and Hanks recovered on his cross-action $1,000 plus interest. The Court of Civil Appeals found that the facts "would perhaps be sufficient to establish that appellee [Hanks] had not failed to use due diligence in availing himself of all adequate remedies at law to prevent the judgment from becoming final. That is to say, that in reliance upon such information, he was justified in not having timely filed motion for new trial prior to his petition for Bill of Review." 369 S.W.2d at 643. That court further stated that it recognized that "the record unquestionably reflects that a grave ·injustice will result to appellee [Hanks]." Nevertheless, the court, with one justice dissenting, held that it had no alternative but to reinstate the default judgment. 369 S.W.2d at 646.

Relief by bill of review is made available in this state by Rule 329b(5) of the Texas Rules of Civil Procedure. The rule does not prescribe the standards by which the actions of a defaulting party must be measured except to say that the bill must be "for sufficient cause" and be "filed within the time allowed by law." This bill, beyond question, was filed within the time allowed by law. The question is whether "sufficient cause" existed.

■ Since the rule does not attempt to specify what "sufficient cause" is, the courts have done so in particular cases. A bill of review proceeding is an equitable one designed to prevent manifest injustice. But while manifest injustice to the defaulting party is a material consideration, another is the necessity for there being finality to judgments. The litigating parties are entitled to know when the contest is at an end; and others, including title examiners and purchasers and sellers of land and interests in land have a need for knowledge as

to whether or not litigation involving title to land has been finally concluded.

The general rules on the granting of a bill of review are set out in Alexander v. Hagedorn, 148 Tex. 565, 226 S.W.2d 996 (1950). This Court there said that before a litigant can successfully set aside a final judgment, he must allege and prove, within the time allowed, (1) a meritorious defense to the cause of action alleged to support the judgment, (2) which he was prevented from making by fraud, accident or wrongful act of the opposite party, (3) unmixed with any fault or negligence on his own part.

The litigant in Hagedorn attempted to rely upon the alleged promise of the clerk of the court to inform him as to when to return to court to defend the suit. The clerk failed to inform Hagedorn, and a default judgment was rendered against him. After an extensive review of the authorities within and without this state, the Court held that this act (or failure to act) on the part of the clerk was not part of his official duties, and that Hagedorn was not entitled to a bill of review under those circumstances.

This Court in Hagedorn, however, went to some length to distinguish cases where parties or their counsel had relied upon *official* acts of officers of the Court. After quoting from American Jurisprudence, this Court stated:

> "It is his [the clerk's] official duty to know when sessions of the court will be held, what class of business will or will not be disposed of at a given time *and what his office records show with respect to pending litigation;* therefore when he gives an inquiring litigant the wrong information within that field the litigant is not at fault." [Emphasis added.]

In Hagedorn, there was no fault of the opposite party, his counsel, or of an officer of the court in the performance of his official duties.

The trial court here found that Hanks was not negligent in failing to file an answer because of his having misplaced the citation, and that the default judgment was not caused by his negligence. It will be here assumed that, viewing the matter under bill of review standards, there is no evidence to support these findings, and that Hanks was negligent as a matter of law. This negligence, however, was in failing to file an answer in time, not in his failure to timely file a motion for new trial.

■ Under the law, Hanks had two rights or remedies: (1) to file an answer to prevent a default judgment, and (2) to file a motion for new trial within ten days after the judgment was taken. Rule 329b (1), Tex.Rules Civ.Proc.

Since there was a reliance on the erroneous official information given by the clerk, it was unnecessary for Hanks to show, as was required under other circumstances in Hagedorn, that he was prevented from filing his motion for new trial because of some accident, fraud, or wrongful act of the opposing party.

Here, because of the incorrect information given by the clerk, within his official duties as set out in Hagedorn, Hanks was misled, and filed an answer instead of a motion for new trial. The Court of Civil Appeals, nevertheless, reversed this cause because it found that Hanks, by bill of review standards as contrasted with those required in an ordinary motion for new trial, was negligent in failing to file an answer. Compare Craddock v. Sunshine Bus Lines, 134 Tex. 388, 133 S.W.2d 124 (1939) to Johnson v. Templeton, 60 Tex. 238 (1883). As we view the case, this was not of controlling importance. Assuming that to be true, Hanks was nevertheless entitled to file a motion for new trial.

The controlling facts under these circumstances are: (1) whether the failure to file the answer was either intentional or the result of conscious indifference. Craddock v. Sunshine Bus Lines, supra; (2) whether

Hanks was misinformed by the clerk within the time for filing the motion for new trial, and (3) was thus prevented from filing, or misled into not filing, his motion in time; (4) whether Hanks had a meritorious defense; and (5) whether the plaintiff Rosser would not be caused to suffer injury by the granting of the bill of review.

■ Accordingly, we hold, within the spirit of the Hagedorn opinion, and assuming that the failure to file an answer is not intentional or the result of conscious indifference, that if a litigant is misled or prevented from filing a motion for new trial by misinformation of an officer of the court, acting within his official duties, and this misinformation is given to the party or his counsel within the ten-day period for filing the motion for new trial so as to bring about the failure to file a motion for new trial in time, the trial court, upon finding that the party has a meritorious defense and that no injury will result to the opposite party, may grant the bill of review.

We shall look again at the evidence to determine, if we can, whether, under these standards, the facts support the judgment of the Court of Civil Appeals; and if not, what judgment this Court should enter.

The bill of review was tried before the court. It was the judgment of the court that the bill of review should be in all things granted. Rosser requested the court to make findings of fact and conclusions of law on the bill of review action. The fact findings which were made are substantially the same as the facts set out herein. The court accepted the testimony of A. A. DeLee as to the inquiries of the clerk and the answers received by him. The court further found that Rosser's attorney received a copy of Hanks' answer the same day it was filed; that he knew that Hanks' attorney was attempting to protect Hanks' rights; but Rosser's attorney stated to the court that he owed no duty to anyone to advise that a default judgment had been taken. The court further found that upon learning that execution had been served, Hanks'

counsel acted immediately and as expeditiously as possible to file the bill of review.

The trial court, in addition to his findings on want of negligence on Hanks' part in filing the answer, concluded that Hanks had a good defense to the asserted cause of action; that he had a meritorious defense to the suit, and that upon the trial, the result would be different from that rendered upon the default; and that it would be against the conscience to allow the judgment obtained by Rosser against Hanks to stand.

In the trial upon the merits, it was stipulated that the Statement of Facts in the bill of review hearing would be introduced and the evidence there adduced would be used for all purposes. In addition to that evidence, reviewed above, Hanks gave testimony, as to the arrangement between himself and Rosser whereby Rosser was to do some work for Hanks; that Rosser had not only been paid all that he was due, but had taken money from the venture without authority and had not repaid it. Hanks further testified that Rosser had asked Hanks to lend him $1,000 to pay off some of Rosser's creditors; that Hanks had done so, and had not been repaid. This is the basis of Hanks' cross-action.

The defendant Rosser, though represented by counsel, offered no evidence either on the bill of review or upon the trial upon the merits, except that he joined with counsel for Hanks in tendering the attorney Thomas as a witness. Thomas' testimony is undisputed. As to the cross-action, Rosser's counsel stated, " * * * we will confess that he [Hanks] has a counter claim. Let the Court's ruling stand on the basis that he had a successful counter claim for $1,000. All that I ask in this suit is final determination on the merits on the Bill of Review."

■■ Looking then at the five controlling elements set out above as to the bill of review, we find that the trial court specifically concluded that Hanks had a meritorious defense. The fact findings of the trial court are to the effect that Hanks was misinformed by the clerk within the time

for filing a motion for new trial and was thus misled into not filing his motion in time. We construe the opinion of the Court of Civil Appeals to hold in context that there was sufficient evidence to support these findings. In fact, the evidence in this regard is undisputed.

The court found that Hanks was not negligent in failing to file his answer in time, and that the failure to answer was due to accident or mistake. By necessary implication, this means that the trial court was of the opinion that Hanks did not intentionally fail to answer, and that his failure to answer was not caused by conscious indifference.

The remaining element is that Rosser would not be caused to suffer injury by the granting of the motion. He was shown to be in the television repair business under the name of Rosser Electronics. The clear implication is that he was still in the immediate vicinity and could have been in attendance upon the court without substantial inconvenience. There was evidence that Hanks did not owe Rosser the money. Under these circumstances Hanks made out a prima facie case of proving the negative: no injury to Rosser. The burden of going forward shifted to Rosser. There was no evidence that Rosser would have been damaged in any respect by the granting of the bill of review, and no effort was made to introduce any such evidence.

The only point of error which Rosser brought to the Court of Civil Appeals was that the trial court erred in setting aside the default judgment against Hanks and entering judgment for the defendant Hanks. Rosser does not argue or even suggest in his brief in that court or his reply to the application for writ of error in this Court that any injury to himself was, or would have been, occasioned by the granting of the bill of review. His argument in both courts was as to the negligence of Hanks in failing to file the original answer.

All of the necessary elements set out above, therefore, were fulfilled. Accordingly, we hold that the Court of Civil Appeals erred in reversing the judgment of the trial court in the suit by Rosser against Hanks. Rosser had no other points in the Court of Civil Appeals which could be looked to for the purpose of supporting its judgment, and he has none here.

As to the judgment on Hanks' cross-action against Rosser, no appeal was perfected. Rosser did file an appeal bond in the trial court, but he had no point of error in the Court of Civil Appeals complaining of the entry of the judgment on the cross-action. And he has no application for writ of error or cross-point in this Court on the matter.

■    Under these circumstances, it becomes the duty of this Court to enter the judgment which the Court of Civil Appeals should have rendered. Rule 505, Texas Rules of Civil Procedure; Tobin v. Garcia, 159 Tex. 58, 316 S.W.2d 396 (1958). Accordingly, the judgment of the Court of Civil Appeals, in so far as it reversed the trial court's judgment in the suit of Rosser against Hanks is concerned, is reversed and that of the trial court is affirmed. On the cross-action by Hanks against Rosser, the action of the Court of Civil Appeals (in affirming the trial court) is affirmed.

GRIFFIN, Justice (dissenting).

The law with regard to bills of review as it has existed since the beginning of Texas jurisprudence has been changed by the majority opinion herein.

A bill of review is an equitable proceeding and is so recognized by the majority. Heretofore there has been a clearly recognized distinction between a bill of review and a motion for new trial.

All emphasis herein is supplied by the writer.

As late as 1961, in the case of Fulton v. Finch, 162 Tex. 351, 346 S.W.2d 823, in a unanimous opinion, this Court held that after the time prescribed in Rule 329–b,

Texas Rules of Civil Procedure, that a judgment should become final, any action of the trial judge was absolutely void, and that a writ of mandamus would be issued, ordering the trial judge to expunge the order.

Also, in 1961, this Court had before it the case of McEwen v. Harrison, 162 Tex. 125, 345 S.W.2d 706, which involved the question whether the trial court, after the expiration of thirty days from the date of judgment and with no motion for new trial being filed, had the power to set aside a default judgment rendered against a party not served with process, and, therefore, the trial court had no jurisdiction over such non-served party. In a unanimous opinion, this Court said:

"Accordingly, we construe the emphasized provision of Rule 329–b to mean that when the time for filing a motion for new trial has expired and relief may not be obtained by appeal, a proceeding in the nature of a bill of review is the exclusive method of vacating a default judgment rendered in a case in which the court had jurisdictional power to render it. Into this category will fall those cases in which a default judgment is asserted to be void for want of service, or of valid service, of process."

Further this Court said:

"Our construction of the Rule will give a *diligent defendant* with a meritorious defense every opportunity to protect himself against an unwarranted default judgment."

In the case at bar, it is undisputed that the defendant in the main suit, Mr. Hanks, was duly and legally served by a legal and proper citation commanding him "to *appear by filing a written answer to the plaintiff's petition,* at or before 10:00 o'clock A.M. of the Monday next after the expiration of 20 days after the date of service thereof * * *." The record shows that was not the first citation served on Hanks, but that

there had been at least two other and different suits filed against him and process served on him prior to the service of this citation.

The provision of "to appear by filing a written answer to the plaintiff's petition" was inserted after this Court's decision in the Hagedorn case (226 S.W.2d 996) and for the very purpose of preventing those served seeking to justify their not filing a written answer within the time prescribed by law.

In the present case no answer was filed by appearance day plus approximately one week thereafter, and there is no claim made by petitioner Hanks that he was prevented from filing an answer at any time, either before or after appearance day by any action or conduct of plaintiff or his attorney, nor by any conduct, information or action of the clerk's office until May 25th—which was the ninth day after appearance day.

Further, there is no showing that the information that no judgment had been taken, given by the clerk's office in answer to the first telephone call made by Hanks' attorney around 11:00 A.M. was not true and correct. The hour of the taking of the default judgment is not in this record. Even though informed by the clerk that time was ripe for a judgment the morning of May 25th, and even though the name and residence of the plaintiff's attorney was at that time known, as well as the name of the judge presiding over the court where the action was pending, no effort was made to have the court clerk enter the name of defendant's attorney on the judge's trial docket, or to contact plaintiff's attorney or the trial judge and inform both or either of them that an answer for defendant Hanks was being filed. Any one of the three last above mentioned actions would have prevented the taking of a default judgment, or would have informed defendant that a default judgment had been taken that day.

The law prior to the decision in this case, required in bill of review cases, three very clear, simple, easily understood and univer-

sally and unanimously recognized things to exist, viz: (1) a meritorious defense to the cause of action alleged to support the judgment—and for this case we can assume such a defense was pleaded by Hanks, (2) *which he was prevented from making by the fraud, accident or wrongful act of the opposite party*—and here there is no contention, allegation by pleading or proof of this requisite and necessary element; (3) unmixed with *any fault or negligence* of his own. Here the majority has set aside this third test and has changed it to read "that the failure to answer [was] not intentional or the result of conscious indifference."

In connection with the last above test, the majority holds as a matter of law that under all the circumstances of this case, Mr. Hanks misplacing his citation and paying no attention to it was not conscious indifference or intentional failure to answer by appearance day. There is no finding by the trial court to this effect. The findings of the trial court are that Mr. Hanks was not negligent in permitting the default judgment to be taken against him; that Jerry Hanks used due diligence to prevent the judgment being had against him after he learned that the accident or mistake had occurred. It is interesting to note that Mr. Hanks in his testimony swore that he thought he had plenty of time to file an answer—not that when he misplaced the citation, he forgot about the suit. All the findings of the trial court were to the effect that Mr. Hanks was without fault and not negligent, because of losing the citation. Such conduct as misplacing the citation, or forgetting about it, has been held to be negligence prior to this holding. Woods v. Gamboa (Tex.Civ.App., 1950, writ refused, n. r. e.), 229 S.W.2d 1021; Banks v. Crawford (Tex.Civ.App., 1959, writ refused, n. r. e.), 330 S.W.2d 243.

The three requisites to be pleaded and proved as set out in the Hagedorn case were not original with the court in that case. These three requisites were first mentioned in the jurisprudence of this State in the case of Goss v. McClaren, 17 Tex. 107

(1856). See also Plummer v. Power, 29 Tex. 6 (1867); Johnson v. Templeton, 60 Tex. 238 (1883); Nichols v. Dibrell, 61 Tex. 539 (1884); Morris v. Edwards, 62 Tex. 205 (1884); Buchanan v. Bilger, 64 Tex. 589 (1885); Harn v. Phelps, 65 Tex. 592 (1886); McMurry v. McMurry, 67 Tex. 665, 4 S.W. 357 (1887); Harris v. Musgrave, 72 Tex. 18, 9 S.W. 90 (1880); Merrill v. Roberts, 78 Tex. 28, 14 S.W. 254 (1890); Hammond v. Atlee, 15 Tex.Civ. App. 267, 39 S.W. 600 (1897, writ denied); Ayres v. Parrish, 15 Tex.Civ.App. 541, 40 S.W. 435 (1897, writ denied); McCorkle v. Everett, 16 Tex.Civ.App. 552, 41 S.W. 136 (1897, writ denied); Wilson v. Smith, 17 Tex.Civ.App. 188, 43 S.W. 1086 (1897, writ dismissed); Ames Iron Works v. Chinn, 20 Tex.Civ.App. 382, 49 S.W. 665 (1899, writ dismissed, w. o. j.); Wilson v. Woodward, 54 S.W. 385 (Tex.Civ.App., 1899, n. w. h.); Bergstrom v. Kiel, 28 Tex.Civ.App. 532, 67 S.W. 781 (1902, writ denied); Crosby v. Di Palma, 141 S.W. 321 (Tex.Civ.App., 1911, writ denied); McCamant v. McCamant, 187 S.W. 1096 (Tex.Civ.App., 1916, n. w. h.); First National Bank of Big Spring v. Hartzog, 192 S.W. 363 (Tex.Civ. App., 1917, n. w. h.); Reed & Reed v. McKee, 204 S.W. 717 (Tex.Civ.App., 1918, n. w. h.); Drinkard v. Jenkins, 207 S.W. 353 (Tex.Civ.App., 1918, writ dismd.); Bain v. Coats, 244 S.W. 130 (Com. of App., 1922); Davis v. Cox, 4 S.W.2d 1008 (Tex. Civ.App., 1928, writ dismissed); Gehret v. Hetkes, 36 S.W.2d 700 (Tex.Comm.App., opinion adopted, 1929); Maytag Southwestern Co. v. Thornton, 20 S.W.2d 383 (Tex.Civ.App., 1929, writ dismd.); Humphrey v. Harrell, 29 S.W.2d 963 (Tex. Comm.App., 1930); Wear v. McCallum, 119 Tex. 473, 33 S.W.2d 723 (1930); Empire Gas & Fuel Co. v. Noble, 36 S.W.2d 451 (Tex.Comm.App., 1931); Stewart v. Byrne, 42 S.W.2d 234 (Tex.Comm.App., 1931); Smith v. Ferrell (Comm. of App., 1932), 44 S.W.2d 962 (1, 2) and (7), opinion expressly approved by Supreme Court; Winters Mutual Aid Ass'n, Circle No. 2 v. Reddin (Comm. of App., 1932), 49 S.W.2d

1095 (4, 5) approved by Supreme Court; Honey v. Wood, 46 S.W.2d 334 (Tex.Civ. App., 1934, n. w. h.); Texas Employers' Ins. Ass'n v. Arnold; 126 Tex. 466, 88 S.W. 2d 473 (1935); Mann v. Risher (1938), 131 Tex. 498, 116 S.W.2d 692(5); Garcia v. Jones, 155 S.W.2d 671 (Tex.Civ.App., 1941, writ refused, w. o. m.); Grayson v. Johnson, 181 S.W.2d 312 (Tex.Civ.App., 1944, n. w. h.); Kelly v. Wright (1945), 144 Tex. 114, 188 S.W.2d 983(6); Garcia v. Ramos, (Tex.Civ.App., 1948, writ refused), 208 S.W.2d 111(1); Garza v. King (Tex.Civ. App., 1950, writ ref.), 233 S.W.2d 884; Smith v. City of Dallas, 248 S.W.2d 832 (Tex.Civ.App., 1952, n. w. h.); Banks v. Crawford (Tex.Civ.App., 1959, writ refused, n. r. e.), 330 S.W.2d 243; Pollard v. Steffens, 161 Tex. 594, 343 S.W.2d 234(1), (1961); Chapa v. Wirth, 343 S.W.2d 936 (Tex.Civ.App., 1961, n. w. h.); Moore v. Mathis, 369 S.W.2d 450 (Tex.Civ.App., 1963, writ refused, n. r. e.); 3 Ala.Law Review, 224, 226, 1950–51.

The above are a few of the myriad of authorities, but I do not want to unduly lengthen this opinion.

There has also been a well-recognized distinction between the pleadings and proof necessary to secure a retrial on a motion for new trial and on a bill of review. Many of the cases cited immediately above set out the distinction. A clear statement of this difference, and the reason therefor, is found in the case of Smith v. Ferrell (Comm. of App., 1932), 44 S.W.2d 962 (1 & 2) & (7), opinion expressly approved by the Supreme Court.

"It has been well said that in ordinary cases the trial judge has a certain amount of discretion in granting new trials during the term. However, no such discretion can be exercised after the expiration of the term. The judgment then becomes a vested right which can only be divested by a direct proceeding filed for that purpose, and, when such a proceeding is resorted to, the person presenting the bill must bring himself strictly within the rules of law providing for relief in such cases. It is not enough that he plead and prove that he had a meritorious defense in the first instance, but *he must go further and show that he was then free from negligence.*"

The case of State v. Newman (Tex.Civ. App., 1951, writ refused), 237 S.W.2d 417, expressly refused to recognize as a test in a bill of review case that the failure to file an answer before judgment taken could be excused by showing such failure was not intentional nor the result of conscious indifference. The trial court found that the failure of the defendant to file an answer before default was not intentional nor the result of conscious indifference on his part, but was due to a mistake or an accident which prevented him from making his defense, etc., etc.

The court said:

"No intimation is made that Mr. Newman was prevented from making his defense *by the fraud, accident or wrongful act of plaintiff;* or that there was not any fault or negligence of the defendant, and under all of the circumstances and facts in this case it is apparent that the failure of the defendant to file an answer was occasioned by the negligence or lack of diligence by the defendant and/or his attorneys, and he cannot be relieved of the effect of the judgment."

That part of the Hagedorn case quoted by the majority opinion holds only that the reliance on the clerk's statements as to the contents of his official records, is an excuse for the defendant's negligence in *not filing a motion for new trial, nor for failure to file an answer* by appearance day plus eight days. Hagedorn does not hold that misinformation given by the clerk can be imputed to the plaintiff herein so as to satisfy the second well-recognized requirement, that defendant was prevented from making his defense by the fraud, accident or wrongful

act of plaintiff herein. As we have said before, it is affirmatively shown that plaintiff was guilty of no such conduct, but on the contrary the record shows that plaintiff's attorney on the eighth day after appearance day sent word to defendant Hanks that no answer had been filed and a default judgment would be taken. In spite of this information received by plaintiff on May 24th, no answer was filed until May 26th.

Although the majority relies solely on Hagedorn as authority for its holding that misinformation from the court clerk—unmixed with any fault of the opposite party—will entitle a negligent defendant to set aside a default judgment after term time, it overlooks the following holding in Hagedorn: "Again, Hagedorn cannot prevail because he has not shown that he was prevented from making his defense to the Alexanders' suit *by their fraud or wrongful act.*" This quote is just as much a declaration of the law as that part quoted in the majority opinion.

A bill of review is an equitable proceeding and one of the fundamental maxims of equity is that "equity rewards the diligent, not one who has slept on his rights."

In this case the majority has deprived an innocent plaintiff of a judgment of a court of record entered not on appearance day but on the ninth day thereafter and before an answer was filed. This judgment became a final judgment thirty days after its entry. Our rules and our decisions deny to a trial judge the right or jurisdiction to grant a new trial therein, but the majority opinion herein applies new trial rules to a bill of review, and affirms the trial court's action granting a new trial and hearing the case.

I cannot bring myself to disregard the well-established precedents as set out in such a multitude of well reasoned opinions by this Court and by the Courts of Civil Appeals for more than one hundred years. The experience of this State has been that these rules are best in order that justice may prevail.

As said by this Court in Wear v. McCallum (1930), 119 Tex. 473, 33 S.W.2d 723, 725:

"A judgment by default in a trial court must be respected and upheld when there was no fraud or mistake in its procurement, and where fair and ample opportunity was afforded the defendant to controvert and contest on their merits the allegations of the plaintiff."

I would affirm the judgment of the Court of Civil Appeals because it follows what was, at the time it was rendered, the well-established and never-questioned law of all the cases decided by all the courts of this State.