Footnotes in HTML versions of 
opinions are designated by boxes (click on the box to see the footnote text) and 
are not numbered. For an exact copy of the opinion, retrieve the Adobe PDF 
version.
 
IN 
THE SUPREME COURT OF TEXAS
 
════════════
No. 05-0295
════════════
 
Fidelity and Guaranty 
Insurance Company,
Petitioner,
 
v.
 
Drewery Construction Company, 
Inc.,
Respondent
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Twelfth District of 
Texas
════════════════════════════════════════════════════
 
PER CURIAM
 
              In 
this suit on a surety bond, Drewery Construction 
Company, Inc., a subcontractor, obtained a default judgment for $158,131.05 plus 
interest and attorney’s fees against Fidelity and Guaranty Insurance Company, 
surety for the general contractor, JenCra, Inc. 
Fidelity filed a motion for new trial explaining that the service papers had 
been lost. The trial court denied the motion, and the court of appeals affirmed. 
___ S.W.3d ___. Fidelity asserts three grounds for reversal, the last of which 
is well-taken. Accordingly, we reverse.
              First, 
Fidelity complains of a minor omission in the citation. Rule 99 requires (among 
other things) that citation be directed to the defendant and show the names of 
parties. Tex. R. Civ. P. 99(b)(7)-(8). Citation here was correctly 
addressed to “Fidelity and Guaranty Ins. Co.” but the style of the case listed 
only “JenCra, Inc. & Fidelity and” due to space 
constraints, omitting the remainder of Fidelity’s title.
              The 
parties cite and rely on cases concerning restricted appeals (or before 1997, 
writs of error). But this appeal is from a motion for new trial. A brief review 
of the differences in these procedures shows why cases concerning one do not 
necessarily apply to the other.
              A 
restricted appeal is filed directly in an appellate court. See Tex. R. App. P. 30. As in any other 
appeal, the appellate court does not take testimony or receive evidence. 
Instead, the review is limited to errors apparent on the face of the record. 
See Alexander v. Lynda’s Boutique, 134 S.W.3d 845, 848 (Tex. 2004). In such 
appeals, “[t]here are no presumptions in favor of valid issuance, service, and 
return of citation.” Primate Const., Inc. v. Silver, 884 S.W.2d 151, 152 
(Tex. 
1994)(citations omitted). Circumstances require this last rule, because 
presumptions can neither be confirmed nor rebutted by evidence in an appellate 
court. Thus, for example, if the citation says an amended petition was 
attached (which named the defaulted party) and the return says the original 
petition was served (which did not), an appellate court cannot tell from the 
record which is true. Id. Similarly, if the petition 
says the registered agent for service is “Henry Bunting, Jr.” but the citation 
and return reflect service on “Henry Bunting,” an appellate court cannot tell 
whether those persons are different or the same. See Uvalde Country Club v. 
Martin Linen Supply Co., Inc., 690 S.W.2d 884, 885 (Tex. 1985).
              By 
contrast, when a default judgment is attacked by motion for new trial or bill of 
review in the trial court, the record is not so limited. In those proceedings, 
the parties may introduce affidavits, depositions, testimony, and exhibits to 
explain what happened. See Gold v. Gold, 145 S.W.3d 212, 214 (Tex. 2004) (per curiam). That being the case, these procedures focus on what 
has always been and always should be the critical question in any default 
judgment: “Why did the defendant not appear?” 
              If 
the answer to this critical question is “Because I didn’t get the suit papers,” 
the default generally must be set aside. 

See Peralta v. Heights Med. Ctr., Inc., 485 U.S. 80, 84 (1988) (“Failure to give notice 
violates the most rudimentary demands of due process of law.”); Caldwell v. 
Barnes, 154 S.W.3d 93, 96-97 (Tex. 2004). Exceptions to this rule exist when 
nonreceipt is uncorroborated, see Primate Constr., 884 S.W.2d at 152, or was a bill-of-review 
claimant’s own fault, see Campus Invs., Inc. v. 
Cullever, 144 S.W.3d 464, 466 (Tex. 2004). 
              But 
if the answer to the critical question is “I got the suit papers but then ...,” 
the default judgment should be set aside only if the defendant proves the three 
familiar Craddock elements. See Craddock v. Sunshine Bus Lines, 
133 S.W.2d 124, 126 (Tex. 1939) (requiring new trial if defendant shows (1) 
default was neither intentional nor conscious indifference, (2) meritorious 
defense, and (3) new trial would cause neither delay nor undue prejudice).
              In 
this case, undisputed evidence presented on the motion for new trial showed that 
Fidelity’s registered agent received the suit papers. Thus, the only relevance 
of the partial omission of Fidelity’s name is its possible role in the 
Craddock analysis. While errors in suit papers might mislead a defendant 
into failing to answer, Fidelity makes no such assertion here. Because 
Fidelity’s failure to answer had nothing to do with this omission, it provides 
no ground for setting aside the default judgment by motion for new trial.
              Second, 
Fidelity argues that the default should be set aside because it was served with 
Drewery’s original petition, which was later amended 
before the default judgment. But the only difference in the two petitions was an 
amendment to allow long-arm service on JenCra by 
serving the Secretary of State. See generally Tex. Civ. Prac. & Rem. Code, 
Chapter 17. Service of an amended petition on a party that has not appeared is 
necessary only when a plaintiff “seeks a more onerous judgment than prayed for 
in the original pleading.” Weaver v. Hartford Accident & Indem. Co., 570 S.W.2d 367, 370 (Tex. 1978). That was not 
the case here.
              Fidelity’s 
last argument finds better traction. Of the three Craddock elements 
needed to set aside a default, Drewery argues, and the 
court of appeals held, that Fidelity failed to establish only the first — 
whether the default was the result of accident or mistake. 


              Fidelity 
attached four affidavits to its motion for new trial that establish the 
following facts. Fidelity’s registered agent for service, Corporation Service 
Company (CSC), received Drewery’s petition and 
citation. Though in the ordinary course of business CSC would forward an 
electronic scan of the documents to a Fidelity affiliate, computer records show 
this never occurred. As a backup, in the ordinary course of business CSC would 
forward the service documents themselves to the same affiliate, where they were 
compared with the electronic copy and then discarded after 90 days. As 90 days 
had passed before Fidelity learned of the default, all the records received 
during that time had been discarded. Thus, neither CSC nor Fidelity could verify 
whether Drewery’s suit papers were actually forwarded 
by CSC to Fidelity. CSC averred that an employee of Fidelity’s affiliate 
“acknowledged receipt of the Petition,” but the Fidelity agent who should have 
received them averred that she never did. 
              The 
court of appeals refused relief on the ground that Fidelity’s affidavits did not 
explain what happened to the service documents:
[T]here 
is no affidavit from a person who actually handled the citation explaining how 
the citation was lost or where in the chain of communication a breakdown 
occurred that led to Fidelity’s failure to answer the citation. In this case, 
none of the affidavits Fidelity submitted explain what happened to the citation. 
Each affidavit stated that Fidelity’s failure to answer was not intentional. 
However, a trial court cannot vacate a default judgment based only upon general 
allegations or conclusions. 
 
___ 
S.W.3d at ___ (citations omitted).
              We 
disagree that Fidelity’s four affidavits were general or conclusory. To the contrary, they detail the procedures for 
handling service papers in general and what is known about Drewery’s papers in particular. In the case of the 
electronic records, they explain precisely where the breakdown occurred — at 
data entry by CSC. 
              We 
also disagree that to establish that papers were lost there must be an affidavit 
from the person who lost them describing how it occurred. People often do not 
know where or how they lost something — that is precisely why it remains “lost.” 
This Court has often set aside default judgments when papers were misplaced, 
though no one knew precisely how. See Old Republic Ins. Co. v. Scott, 873 
S.W.2d 381, 382 (Tex. 1994) (reversing default when investigator averred that 
she believed suit papers were inadvertently included among files transferred to 
another adjustment company); Estate of Pollack v. McMurrey, 858 S.W.2d 388, 391 (Tex. 1993) (reversing 
default when unidentified person signed for papers and never delivered them to 
executrix); Hanks v. Rosser, 378 S.W.2d 31, 32, 36 (Tex. 1964) (reversing 
default when druggist testified he placed suit papers “on his prescription 
counter,” that he “just lost them” and “never did find them”).
              We 
agree that a conclusory statement that documents were 
“lost” must generally be supported by some explanation from the person most 
likely to have seen them, or of the efforts made to find them. 

But the Craddock standard is one of intentional or conscious indifference 
— that the defendant knew it was sued but did not care. An excuse need not be a 
good one to suffice. See Craddock, 133 S.W.2d at 125.
              The 
affidavits here show neither intent nor indifference. Instead, they detail 
Fidelity’s efforts to establish a system that would avoid precisely what 
happened. As Drewery did not controvert this proof, 
the trial court was not at liberty to disregard it. See Dir., State Employees 
Workers’ Comp. Div. v. Evans, 889 S.W.2d 266, 269 (Tex. 1994).
              Accordingly, 
without hearing oral argument, we reverse the court of appeals’ judgment and 
remand the case to the trial court for further proceedings consistent with this 
opinion. Tex. R. App. P. 
59.1.