NUMBER 13-02-153-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG




JOSE ABEL GARZA,                                                         Appellant,

v.

ATTORNEY GENERAL OF TEXAS
and MARGARITA A. YOGI,                                                Appellees.




On appeal from the 156th District Court
of Bee County, Texas.




O P I N I O N

Before Justices Yañez, Castillo, and Garza
Opinion by Justice Castillo

         Appellant Jose Abel Garza filed a petition for bill of review to set aside a default
judgment for child support and retroactive child support in a paternity action. After
an evidentiary hearing, the trial court denied the bill of review and filed findings of fact
and conclusions of law. This appeal ensued. We affirm.
I. BACKGROUND
         Appellee, the Attorney General, filed a SAPCR to establish the parent-child
relationship between Garza and his minor daughter, J.M.G., born of Garza's
relationship with appellee Margarita A. Yogi.


 The Attorney General prosecuted the
suit to establish paternity and obtained the default judgment against Garza. On May
18, 1999, the trial court entered the default order establishing the parent-child
relationship between Garza and J.M.G., and requiring that Garza pay (1) $417.00
monthly child support, and (2) $200.00 monthly payments toward a default
retroactive child support judgment granted in the same decree.


 The Attorney General
filed a certificate of last known address on May 18, 1999. On June 1, 2001, the
Attorney General filed a motion to enforce, alleging non-payment of court-ordered child
support and retroactive child support.


 On October 1, 2001, Garza filed a petition for
bill of review. Germaine to Garza's complaint in his petition and on appeal are his
allegations that (1) in the original paternity action, he was not personally served with
citation; and (2) after the trial court entered a default judgment against him, he did not
receive notice of the default judgment. 
II. ISSUES PRESENTED
         Garza presents two issues on appeal. In the first, Garza argues that the trial
court’s finding that he was personally served with process on March 30, 1998, is so
against the overwhelming preponderance of the evidence as to be manifestly unjust. 
In his second issue, Garza argues that, in light of the failure of the district clerk to
comply with Texas Rules of Civil Procedure 239a and 306a, such that he received no
actual notice of the May 18, 1999, default judgment until November 1999, his
conduct in November 1999 to begin the withholding of child support and his failure
to file a petition for bill of review until 2001 do not justify the trial court’s denial of the
bill of review. 
III. BILL OF REVIEW 
         A bill of review is an equitable proceeding to set aside a judgment that is no
longer appealable or subject to a motion for new trial. State v. 1985 Chevrolet Pickup
Truck, 778 S.W.2d 463, 464 (Tex. 1989) (per curiam) (op. on reh’g); Baker v.
Goldsmith, 582 S.W.2d 404, 406 (Tex. 1979); Mowbray v. Avery, 76 S.W.3d 663,
682 (Tex. App.–Corpus Christi 2002, pet. denied), cert. denied, 498 U.S. 1101
(1991). Upon the expiration of the trial court's plenary power, a judgment cannot be
set aside by the trial court except by bill of review for sufficient cause, filed within the
time allowed by law. See Tex. R. Civ. P. 329b(f). To have the judgment set aside, the
complainant must first meet certain pretrial burdens and then prevail on the merits. 
Baker, 582 S.W.2d at 408-09 (describing complainant's pretrial prima facie burden of
proof); Kessler v. Kessler, 693 S.W.2d 522, 526 (Tex. App.–Corpus Christi 1985,writ
ref'd n.r.e.).
         The grounds upon which a bill of review can be obtained are narrow because
the procedure conflicts with the fundamental policy that judgments must become final
at some point. King Ranch v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003) (citing
Alexander v. Hagedorn, 226 S.W.2d 996, 998 (Tex. 1950)); see also Transworld Fin.
Servs., Corp. v. Briscoe, 722 S.W.2d 407, 407 (Tex. 1987); Montgomery v. Kennedy,
669 S.W.2d 309, 312 (Tex. 1984). The burden on a bill of review petitioner is heavy. 
See Layton v. Nationsbanc Mortgage Corp., 141 S.W.3d 760, 763 (Tex. App.–Corpus
Christi 2004, no pet.). 
         Before a litigant can successfully invoke the equitable powers of the court and
secure a bill of review to set aside a final judgment, he must generally allege and prove
(1) a meritorious defense to the cause of action alleged to support the judgment; (2)
which he was prevented from making by the fraud, accident, or wrongful act of the
opposing party; and (3) unmixed with any fault or negligence of his own. King Ranch,
118 S.W.3d at 752 (citing Hagedorn, 226 S.W.2d at 998); see also Wembley Inv. Co.
v. Herrera, 11 S.W.3d 924, 927 (Tex. 1999) (per curiam); Baker, 582 S.W.2d at 407-08. The petitioner must further allege, with particularity, sworn facts sufficient to
constitute a meritorious defense and, as a pretrial matter, present prima facie proof to
support the contention. 1985 Chevrolet Pickup Truck, 778 S.W.2d at 464. 
         We review the granting or denial of a bill of review under an abuse of discretion
standard. Manley v. Parsons, 112 S.W.3d 335, 337 (Tex. App.–Corpus Christi 2003,
pet. denied). In reviewing the grant or denial of a bill of review, we indulge every
presumption in favor of the trial court’s ruling and will not disturb that ruling unless the
trial court abused its discretion. Layton, 141 S.W.3d at 762-63; Narvaez v.
Maldonado, 127 S.W.3d 313, 319 (Tex. App.–Austin 2004, no pet.); Parsons, 112
S.W.3d at 337. A trial court abuses its discretion if it acts in an unreasonable or
arbitrary manner, or without reference to guiding rules and principles. Layton, 141
S.W.3d at 763. When the inquiry on the bill of review concerns questions of law,
such as whether an appellant presented prima facie proof of a meritorious defense, we
review the trial court's decision de novo. Parsons, 112 S.W.3d at 337 n.2. 
         Appellate review of the trial court's findings of historical fact is deferential
because the trial court is in a better position to weigh credibility and make such
determinations. In re R.J.H., 79 S.W.3d 1, 6 (Tex. 2002). In applying the abuse of
discretion standard, reviewing courts defer to the trial court's factual determinations;
a reviewing court does not engage in its own factual review, but decides whether the
record supports the trial court's resolution of factual matters. State v. $217,590.00
in U. S. Currency, 18 S.W.3d 631, 633-34 (Tex. 2000); Goode v. Shoukfeh, 943
S.W.2d 441, 446 (Tex. 1997). If the record supports the trial court's evidentiary
findings, the reviewing court is not at liberty to disturb them. $217,590.00, 18
S.W.3d at 634 (citing Walker v. Packer, 827 S.W.2d 833, 839-40 (Tex. 1992)). A
reviewing court instead determines only whether the trial court properly applied the
law to the facts in reaching its legal conclusion. See $217,500, 18 S.W.3d at 634;
Segura v. State, 826 S.W.2d 178, 181 (Tex. App.–Dallas 1992, pet. ref'd). 
         A trial court clearly abuses its discretion if "it reaches a decision so arbitrary and
unreasonable as to amount to a clear and prejudicial error of law." Packer, 827
S.W.2d at 839; Johnson v. Fourth Court of Appeals, 700 S.W.2d 916, 917 (Tex.
1985). With respect to resolution of factual issues or matters committed to the trial
court's discretion, the reviewing court may not substitute its judgment for that of the
trial court. Packer, 827 S.W.2d at 839; Flores v. Fourth Court of Appeals, 777
S.W.2d 38, 41-42 (Tex. 1989). Under this standard, an appellant must establish that
the trial court could reasonably have reached only one decision. Packer, 827 S.W.2d
at 840; Johnson, 700 S.W.2d at 917. Even if the reviewing court would have decided
the issue differently, it cannot disturb the trial court's decision unless it is shown to
be arbitrary and unreasonable. Packer, 827 S.W.2d at 840; Johnson, 700 S.W.2d at
918.
IV. LACK OF PROPER SERVICE
         In his first issue, Garza asserts the finding of service was so against the
overwhelming weight of the evidence as to be manifestly unjust. The Attorney
General responds, in essence, that the trial court made the appropriate credibility
determinations in reaching its decision.


 A defendant who challenges a default
judgment on the basis of defective service must do so by motion for new trial, or if the
trial court's plenary power has expired, by bill of review. McEwen v. Harrison, 345
S.W.2d 706, 710 (Tex. 1961).


 
A. Particularized Standard of Review
         We begin by considering what a bill of review plaintiff must prove when
claiming lack of service of process. As we have noted, a bill of review is an equitable
proceeding brought by a party seeking to set aside a prior judgment that is no longer
subject to challenge by a motion for new trial or appeal. See Caldwell v. Barnes, 154
S.W.3d 93, 96 (Tex. 2004) (per curiam) (citing Baker, 582 S.W.2d at 406).


 A bill
of review plaintiff must ordinarily plead and prove (1) a meritorious defense to the
underlying cause of action; (2) which the plaintiff was prevented from making by the
fraud, accident, or wrongful act of the opposing party or official mistake; (3) unmixed
with any fault or negligence on their own part. See id. 
         Bill of review plaintiffs claiming non-service, however, are relieved of two
elements ordinarily required to be proved in a bill of review proceeding. Caldwell, 154
S.W.3d at 96. First, if a plaintiff was not served, constitutional due process relieves
the plaintiff from the need to show a meritorious defense. Id. at 96-97 (citing Peralta 
v. Heights Med. Ctr., 485 U.S. 80, 86-87 (1988) (holding that the meritorious defense
requirement in a bill of review proceeding violates due process where the bill of review
plaintiff has no notice of the proceeding in which the default judgment was rendered)). 
Second, the plaintiff is relieved from showing that fraud, accident, wrongful act, or
official mistake prevented the plaintiff from presenting such a defense. Id. at 97; see
also v. Zarsky Lumber Co., 26 S.W.3d 690, 693 (Tex. App.–Corpus Christi 2000,
pet. denied). A bill of review plaintiff alleging he was not served, however, must still
prove the third and final element required in a bill of review proceeding–that the
judgment was rendered unmixed with any fault or negligence of his own. Caldwell,
154 S.W.3d at 97. An individual who is not served with process cannot be at fault
or negligent in allowing a default judgment to be rendered. Id. Proof of non-service,
then, will conclusively establish the third and only element that bill of review plaintiffs
are required to prove when they are asserting lack of service of process as their only
defense. Id. 
         Because proof of non-service conclusively negates a plaintiff's fault or
negligence, where material facts are disputed the question of service is properly
resolved at trial and not by the trial court in a pretrial proceeding. Caldwell, 154
S.W.3d at 97. In sum, when a plaintiff seeks a bill of review based solely on a claim
of non-service, the bill of review procedure outlined in Goldsmith must be slightly
modified. See Goldsmith, 582 S.W.2d at 408-09.


 When a plaintiff claims lack of
service, the trial court should do the following: (1) dispense with any pretrial inquiry
into a meritorious defense; (2) hold a trial, at which the bill of review plaintiff assumes
the burden of proving that the plaintiff was not served with process, thereby
conclusively establishing a lack of fault or negligence in allowing a default judgment
to be rendered; and (3) conditioned upon an affirmative finding that the plaintiff was
not served, allow the parties to revert to their original status as plaintiff and defendant
with the burden on the original plaintiff to prove his or her case. Caldwell, 154
S.W.3d at 97-98. 
         At trial, the testimony of a bill of review plaintiff alone, without corroborating
evidence, is insufficient to overcome the presumption that the plaintiff was served.
Caldwell, 154 S.W.3d at 98 n.3. While the bill of review plaintiff must assume this
burden, the bill of review defendant must assume the burden of proving his original
cause of action. See Baker, 582 S.W.2d at 409. This assures that the original,
underlying cause of action is supported by the weight of the evidence. Id. The fact
finder first determines whether the bill of review plaintiff has established by a
preponderance of the evidence that entry of the prior default judgment occurred absent
any fault or negligence on the bill of review plaintiff's part. See id.; see also Caldwell,
154 S.W.3d at 97. Conditioned upon an affirmative finding to this effect, the fact
finder then must determine whether the bill of review defendant, the original plaintiff,
has proved the elements of his original cause of action. See Baker, 582 S.W.2d at
409. Once it is found that the bill of review plaintiff is suffering under a wrongfully-obtained judgment that is unsupported by the weight of the evidence, equity is
satisfied and the court should grant the requested relief. See id. 
         In the bill of review procedure, "all facts may be considered, not just those
appearing on the face of the record." Gold v. Gold, 145 S.W.3d 212, 214 (Tex.
2004) (per curiam). Final judgment in a bill of review proceeding should either deny
any relief to the petitioner or grant the bill of review and set aside the former
judgment. See Baker, 582 S.W.2d at 409. Only one final judgment may be entered
in a bill of review action. Id.
         In conducting this review, the standard for which remains abuse of discretion,
we are mindful that legal and factual sufficiency of the evidence are not independent
grounds of error but are merely factors to be assessed in determining if the trial court
abused its discretion. Zieba v. Martin, 928 S.W.2d 782, 786 (Tex. App.–Houston
[14th Dist.] 1996, no writ). In determining whether the trial court abused its
discretion, we view the evidence in the light most favorable to the trial court's action,
indulging every presumption in favor of the judgment. Zorilla v. Wahid, 83 S.W.3d
247, 253 (Tex. App.–Corpus Christi 2002, no pet.). If some probative and
substantive evidence supports the trial court's findings, the trial court did not abuse
its discretion. Id. 
B. The Law
         There are no presumptions in favor of valid issuance, service and return of
citation in the face of a direct attack by bill of review on a default judgment. Palomin
v. Zarsky Lumber, 26 S.W.3d 690, 693 (Tex. App.–Corpus Christi 2000, pet. denied
(citing Uvalde Country Club v. Martin Linen Supply Co., 690 S.W.2d 884, 885 (Tex.
1985) (per curiam)). A default judgment is improper against a defendant who has not
been served in strict compliance with the law, accepted or waived service, or entered
an appearance. See Tex. R. Civ. P. 124; Wilson v. Dunn, 800 S.W.2d 833, 836 (Tex.
1990); Palomin, 26 S.W.3d at 693. In order to uphold a default judgment on direct
attack, return of service must be shown to strictly comply with the rules of civil
procedure. Primate Constr., Inc. v. Silver, 884 S.W.2d 151, 152 (Tex. 1994) (per
curiam).


 
         Lack of service is purely a question of fact which must be determined by the
trier of the facts. Ward v. Nava, 488 S.W.2d 736, 738 (Tex. 1972). Although the
law makes no presumptions favoring validity of service in an attack on a default
judgment, an officer’s return is prima facie evidence of the facts recited therein. 
Primate Constr., 884 S.W.2d at 152-53. "The return of service is not a trivial,
formulaic document. It has long been considered prima facie evidence of the facts
recited therein." Id. (citing Pleasant Homes v. Allied Bank of Dallas, 776 S.W.2d 153,
154 (Tex. 1989) (per curiam)); Gatlin v. Dibrell, 11 S.W. 908, 909 (1889) ("The
return of the officer imports absolute verity, and was sufficient to authorize the
rendition of judgment upon default."); see also West Columbia Nat’l Bank v. Griffith,
902 S.W.2d 201, 206 (Tex. App.–Houston [1st Dist.] 1995, writ denied). Recitations
in the return of service carry so much weight that they cannot be rebutted by the
uncorroborated proof of the moving party. Primate Constr., 884 S.W.2d at 152; West
Columbia, 902 S.W.2d at 206. 
C. The Record
         Garza and the child's mother, appellee Margarita A. Yogi, apparently lived
together between approximately 1987 and1991. They never married. When the child
was born on December 31,1989, Garza consented to placing his name on her birth
certificate. Garza testified that, when the relationship ended, Yogi told him he was not
the father of the child. She requested that Garza sign papers to that effect and
provide them to her attorney. He failed to do so. Garza testified that he paid child
support to Yogi until May 1999 in checks or money orders totaling $11,045, and he
also gave Yogi a car and cash payments (for which he had no receipts) in the amount
of $14,300. In March 1998, Yogi filed a petition to determine parent-child
relationship. Yogi provided the Rosario Street address on the petition to the Attorney
General because Garza used that address between 1987 and 1991. 
         The return of citation reflects personal service on Garza at the address provided,
1405 North Rosario, Alice, Texas, on March 30, 1999.


 Garza and several witnesses
testified that he was not personally served because he was not at that address on that
date. His daughter, Jo Ann Pitts, testified that she was home at that address when
the deputy sheriff came early on a morning in March 1999. She testified that her
brother Carlos and her husband were also at home on that day. Jo Ann remembered
the circumstances because the deputy laughed at her, and she later determined it was 
because of her disheveled appearance. She testified that they discussed whether the
deputy was looking for her father or brother, Jose Jr., and they determined by the
birth date that Garza was the person. Jo Ann told the deputy the house was her
father's but she lived there. The deputy sheriff handed her the papers and requested
that she give them to Garza when she next saw him. Without reading them and
without understanding that they were important or what they were, Jo Ann placed the
papers, which were stapled and folded in a three-fold, in a box for Garza's mail. 
         Jo Ann testified that her father was not in town on that day and was possibly
in Pleasanton, Texas. Garza returned to Alice in late June 1999 and read the papers
at that time. Garza noted that the hearing was on May 18, 1999, too late for him to
attend. Jo Ann also testified that deputies had looked for Garza before for law-related
concerns.


 
         Garza's son, Carlos Garza, testified that he lived at the Rosario address in March
1999, in a smaller house in the back. On the date in question, he arose late in the
morning and went to Jo Ann's house at the front of the property. He recalled Jo Ann
and her husband laughing because of her appearance when the deputy arrived earlier
that morning. Carlos did not see his father at the house that day because Garza was
working somewhere else. Carlos confirmed that mail and other papers for his father
were kept for him in a box. He saw some folded up papers in the box but did not look
at them. Carlos spoke with Garza after he received the papers. Garza was concerned
because he had missed the court date. 
         Garza's wife, Mary Jane, testified that they had lived on Lynn Street since early
1998 but they lived apart several months during 1998 and 1999, when Garza lived
at the Rosario Street address.


 Mary Jane testified that in March 1999 Garza was not
home because he was unemployed and seeking work. She had no knowledge of his
location until afer his return. In late June, Mary Jane learned that Garza had received
the papers when Garza arrived home, and was upset that Jo Ann had not earlier told
him about the papers. She testified they were not aware of any child support orders
and had no discussions about a judgment regarding child support. She knew Garza
had been sending money for the child since long before they were married. She
testified that a deputy came to their house on Lynn Street in August 2001, but she
had no recollection of any deputy coming to that address in March 1999. 
         Garza testified he was not in Alice in March 1999 because he was staying with
his brother in Pleasanton, while looking for work.


 Garza had been unemployed from
1998 until he was hired by his current employer in November 1999. Garza testified
he had no knowledge of any efforts to serve or locate him until Jo Ann gave him the
paternity suit papers in late June or early July 1999–too late to appear for the May
court date. Garza remembered the approximate date because they were discussing
the Fourth of July. He did not do anything about the documents at that time because
he thought his probation would be revoked for missing a court date.


 He testified
that, had he known about the hearing, he would have attended because he knew the
child support award would have been much less since he had been unemployed for
over a year.
         Garza admitted that the address on his probation records is 1405 Rosario Street. 
He admitted he reported to his probation officer in April and again in July 1999. Garza
agreed that the papers would have been at Jo Ann's house in April and admitted that
he did not check his mail at that time. He visited his and Yogi's daughter, even while
in Pleasanton, but Yogi did not tell him of the suit. Garza stressed that he was never
given any papers in person by the deputy.  
         Deputy sheriff Aubrey Harper testified he could not have served a woman with
the documents because he always made sure he gave papers to the person named for
service. The only exception, he stated, was for a rule 106 order.


 He would not have
indicated personal service on the paperwork, as in this case, if he had not personally
served the papers. He had no independent recollection of Garza or the particular event
or day. 
         Yogi testified that she asked Garza about child support in the Fall of 1999, and
he said, "What are you talking about?" She confirmed she personally did not send any
notices to Garza about court proceedings. 
D. Discussion
         The trial court‛s findings included the following: (1) Garza was properly and
personally served on March 30, 1999, the date reflected on the officer's return of
citation; and (2) because he failed to respond and failed to appear at the hearing, the
default judgment establishing the parent-child relationship was properly entered against
him on May 18, 1999.


 In his first issue, Garza asserts the finding of service was so
against the overwhelming weight of the evidence as to be manifestly unjust. We
construe the issue as a factual sufficiency complaint.


 
         Garza testified that he was not personally served. Garza's daughter, Jo Ann
Pitts, corroborated that testimony, and his son Carlos also testified to his father's
absence from their house and town on that date. The deputy sheriff testified, to the
contrary, that it was his custom and practice to personally serve named individuals,
and he would not have indicated personal service on the citation unless that had in
fact occurred. The deputy sheriff also testified that he had no independent recollection
of the specific event or circumstances. 
         Garza also testified that he failed to check his mail when he returned to town
to report to his probation officer in April. Garza testified he had no knowledge of the
suit until late June when Jo Ann gave him the papers, and that he failed to act at that
time because he was afraid he would be arrested for missing the hearing date. 
E. Disposition
         In alleging lack of service of citation, Garza must prove by a preponderance of
the evidence that the judgment was rendered unmixed with any fault or negligence of
his own. See Caldwell, 154 S.W.3d at 96-97; see also Baker, 582 S.W.2d at 408-09. 
Viewing all the evidence neutrally, with proper deference to the trial court's resolution
of historical facts and conflicts in testimony, we conclude that the evidence is not too
weak to support the finding that Garza was properly served on March 30, 1999. The
finding is not so against the overwhelming weight of the evidence as to be manifestly
unjust. Because material facts were disputed, the question of service was properly
resolved at trial and not by the trial court in a pretrial proceeding. See Caldwell, 154
S.W.3d at 97. We conclude that the trial court did not abuse its discretion in
determining that the preponderance of the evidence did not show lack of service of
citation. We overrule Garza's first issue.
V. LACK OF NOTICE UNDER RULES 239a and 306a
A. The Trial Court’s Findings
         Findings of the trial court included the following: (1) after November 1999,
Garza "began to comply with the judgment;" and (2) Garza, with actual notice of the
judgment in November 1999, "failed to take any action to petition a court in law or in
equity for any remedies until the year 2001, when the Attorney General began an
enforcement action against him."
         In his second issue, Garza argues that, because the district court failed to
provide him with timely notice of the judgment, he was not barred from relief by bill
of review by either his failure to act more quickly or by his payment of child support
as ordered under the judgment. The Attorney General responds that Garza failed to
prove the absence of his own negligence, a required element of a bill of review alleging
untimely notice of judgment. 
B. Rules 239a and 306a
         Texas Rule of Civil Procedure 239a provides that at or immediately prior to the
time an interlocutory or final default judgment is rendered, the clerk shall mail written
notice thereof to the party against whom the judgment was rendered at the address
indicated in the certificate of last known mailing address. Tex. R. Civ. P. 239a.


 The
rule continues: "Failure to comply with the provisions of this rule shall not affect the
finality of the judgment." Tex. R. Civ. P. 239a; see also John v. State, 826 S.W.2d
138, 140 (Tex. 1992) (per curiam). Failure to comply with rule 239a is not grounds
for reversible error. Campbell v. Fincher, 72 S.W.3d 723, 725 (Tex. App.–Waco
2002, no pet.).
         Rule 306a (formerly 306d), regarding the trial court's plenary power, provides
that "[w]hen the final judgment or other appealable order is signed, the clerk of the
court shall immediately give notice to the parties or their attorneys of record . . .
advising that the judgment or order was signed."


 Failure to comply will not affect
the periods of time running from the signing of the judgment, except as provided in
rule 306a(4). Tex. R. Civ. P. 306a(3). Rule 306a(4) provides that if notice has not
been received or sent, the time periods set out in the rule shall begin on the date that
such party does receive such notice, "but in no event shall such periods begin more
than ninety days after the original judgment or other appealable order was signed." 
Tex. R. Civ. P. 306a(4). 
C. The Record
 
         Garza testified he received a certified letter in November 1999 stating that he
must pay $417 a month in child support and $200 per month toward satisfaction of
the judgment. At that time, he called the Attorney General in Victoria to find out how
much he must pay. He testified: "I had a child, I knew I had to pay for child support. 
I knew that." He referred the Attorney General to his employer's secretary to effect
wage withholding. Garza testified he learned about the $47,538 judgment much later. 
When he visited J.M.G., Yogi told Garza that he must pay her $617 a month for child
support. Garza did not believe her because "a lot of times she would say a lot of other
things." 
         Yogi testified that she spoke with Garza about child support in the Fall of 1999.
She asked about the child support, and he said "What are you talking about?" She
confirmed she provided Garza no notices of child support proceedings. Yogi received
a copy of the May 1999 judgment from the Attorney General, and not from the clerk
of the court. 
         Deputy Brenda Gonzales of the Bee County district clerk's office testified as to
the custom and practice of the district clerk's office. She was familiar with a
certificate of last known address, a document filed when a default judgment is
entered. Gonzales testified that, once the document was recorded, the custom and
practice of the district clerk's office was to send, by regular mail, certified copies of
the default judgment to the parties. She did not know what exactly happened in this
case but stated that each file should have a notation that this was done.
         The record shows that the Attorney General provided the district clerk a notice
of Garza's last known address. The record does not show evidence or a notation that
the district clerk sent the required notice of the default judgment to Garza. As
previously noted, Garza testified he was out of town, was not personally served by the
deputy sheriff with the SAPCR, and did not receive the documents from his daughter
until late June 1999. Garza undertook no steps to protect his interests until November
1999, when he received notice of the Attorney General's motion for enforcement. 
According to Garza, it was at that time that he learned of the final judgment for
retroactive child support entered on May 18,1999. 
         The trial court found Garza had actual knowledge of the judgment in November
1999. The finding is not challenged. Garza argues this finding supports the
conclusion that the district clerk failed to comply with rules 239a and 306a, and, thus,
the default judgment should be vacated. He argues that his request to begin
withholding of child support, in accord with the judgment, and his failure to
immediately petition for review of the judgment do not operate to deny him relief by
petition for a bill of review. The Attorney General responds that Garza's inability to
overcome the trial court's finding of proper service means that any inquiry associated
with a failure to timely receive notice must be limited to whether Garza satisfied the
remaining bill of review elements. The Attorney General posits that, whether or not
timely notice of the default judgment was sent, Garza must prove the absence of his
own negligence, and this he did not do.
D. Discussion
1. Failure of the Clerk to Provide the Requisite Notice
         A petitioner for relief by bill of review is required to show that his failure to file
a motion for new trial or appeal was not due to any fault or negligence on his or his
counsel’s part. See Petro-Chemical Transp., Inc. v. Carroll, 514 S.W.2d 240, 246
(Tex. 1974). Relief by bill of review is generally available only if a party has exercised
due diligence in pursuing all adequate legal remedies against a former judgment. Here,
Garza argues that he first learned of the default judgment only after the time frame in
which those remedies might have been pursued. This position is consistent with the
trial court's finding that Garza received actual notice of the default judgment in
November 1999. See Hagedorn, 226 S.W.2d at 998. 
2. The Laches Argument
         Garza argues that because he had no proper notice of the entry of the default
judgment, such that he was unable to pursue other legal remedies, he is not barred
from relief by bill of review by his failure to act more promptly once he learned of the
judgment. We agree. "As long as the bill of review was filed within the statutory time
period, the plaintiffs' nearly two-year delay in bringing it after learning of the default
judgment did not bar relief absent some element of estoppel or extraordinary
circumstance that would render the bill's enforcement inequitable." See Wembley, 11
S.W.3d at 928 (citing Caldwell, 975 S.W.2d at 538). "Laches should not bar an
action on which limitations has not run unless allowing the action 'would work a grave
injustice.'" Caldwell, 975 S.W.2d at 538. The trial court’s finding to the contrary will
not support a denial of relief through bill of review. Id. 
         We note, however, this laches argument is directed to Garza's entitlement to
seek relief through a bill of review. Id. While Garza is not thereby barred from seeking
that relief, it does not mean he is entitled to that relief, which requires a separate
analysis. No extraordinary circumstance is apparent that would prevent application of
this general rule. 
E. Other Requirements of a Bill of Review Petitioner
1. The Absence of a Petitioner's Own Negligence
         Although Garza is entitled to seek relief under a bill of review, he must still
establish the absence of his own negligence to be entitled to a grant of that relief. 
Mowbray, 76 S.W.3d at 682; Hagedorn, 226 S.W.2d at 998. In order to be entitled
to relief through a bill of review, a petitioner must generally satisfy three elements,
including the absence of his own fault or negligence in letting the judgment be taken
against him. West Columbia, 902 S.W.2d at 206; Winrock, 879 S.W.2d at 149. This
requirement not only encompasses whether a petitioner was (a) negligent in allowing
the trial court to render the default judgment against him, but also (b) whether he
exercised due diligence in availing himself of all legal remedies against the former
judgment. Winrock, 879 S.W.2d at 149; Magan v. Hughes Tel. Network, Inc., 727
S.W.2d 104, 105 (Tex. App.–San Antonio 1987, no writ). One who has neglected
to pursue an alternative legal remedy such as a motion for new trial, an appeal, or a
writ of error is not entitled to seek equitable relief by way of bill of review. Winrock,
879 S.W.2d at 149; Rizk v. Mayad, 603 S.W.2d 773, 776 (Tex. 1980).
         The supreme court has further clarified the distinction between these two
aspects of negligence: a bill of review petitioner must plead and prove that his failure
to present a meritorious defense is "unmixed with any fault or negligence of his own." 
Hagedorn, 226 S.W.2d at 998. A bill of review petitioner must also show that he
exercised due diligence to pursue all adequate legal remedies to the judgment in
controversy or show good cause for failing to exhaust the same. Mowbray, 76
S.W.3d at 682 (citing Caldwell, 975 S.W.2d at 537). If the petitioner had legal
remedies which were available but ignored, relief by equitable bill of review is
unavailable. Mowbray, 76 S.W.3d at 682 (citing Wembley, 11 S.W.3d at 927). 
         The evidence reflects that Garza relied principally upon his argument of no
personal service and no knowledge of the suit or the May hearing until late June. The
evidence reflects that Garza was in Alice in April 1999 in order to report to his
probation officer, but he failed to check his mail at that time. The evidence reflects
that Garza did nothing after reviewing the suit papers in June. Further, when he did
learn of the full nature of the judgment in November 1999, Garza had a telephone
conversation with the Attorney General’s office, after which he took steps to deduct
the appropriate child support from his paycheck. He did not challenge the ruling of the
trial court. 
         We have determined that legally sufficient evidence exists, including the
testimony of the deputy sheriff and the citation, to sustain the trial court's finding that
Garza was properly and personally served with the initial suit. Having found Garza
was personally served, we conclude that sufficient evidence existed to enable the trial
court to conclude that Garza was negligent in either failing to appear at the hearing,
prevent entry of the judgment, or pursue available legal remedies to overturn the
judgment. The trial court could properly conclude that Garza failed to establish the
absence of his own negligence. 
2. Fraud, Accident or Mistake
         A petitioner for a bill of review must also generally prove that he was prevented
from presenting a meritorious defense by fraud, accident or mistake on the part of his
opponent. Garza is relieved of this necessity where, as here, he demonstrates that the
judgment resulted from his reliance on a court officer who improperly executed his
official duties. Briscoe, 722 S.W.2d at 408 (citing Hanks v. Rosser, 378 S.W.2d 31,
35 (Tex. 1964)). 
         Where a petitioner has been denied the opportunity to present a defense to a
prior suit, or file a motion for new trial or appeal of the same, because of the reliance
on the improper execution of an official duty by a court functionary (here, the failure
to provide notice of any entry of a default judgment), this "official mistake doctrine"
will permit the petitioner to raise such mistake as an alternative to proving the second
element of a bill of review (namely, that petitioner was precluded from raising his
defense by the fraud, accident or mistake of the opposing party). See Mowbray, 76
S.W.3d at 683. Garza has demonstrated mistake by the court clerk and therefore is
excused from establishing fraud, accident or mistake on the part of Yogi. 
3. A Meritorious Defense
         A final requirement of a bill of review petitioner is that he tender a meritorious
defense. At the hearing held December 13, 2001, Garza’s counsel argued there was
no need to tender a meritorious defense or to show fraud, accident or mistake by the
opposing party because his argument was based principally upon improper service. 
Counsel relied upon Palomin , 26 S.W.3d at 693 and Peralta, 485 U.S. at 80. Counsel
was correct in advising that these elements need not be proven if the argument
revolves around allegations of improper service. However, that does not obviate
applicability of those factors where an argument relates to rules 239a and 306a. 
         In Farias v. Besteiro, 453 S.W.2d 314, 319 (Tex. Civ. App.–Corpus Christi
1979, writ ref’d n.r.e.), the petitioner alleged she had not received timely notice of the
judgment. The court determined that the most relief she could expect was being
excused from complying with the second of the three Hagedorn requirements, that she
was prevented from setting forth a meritorious defense by the fraud, accident or
mistake of the opposite party. Farias, 453 S.W.2d at 319 (citing Rosser, 378 S.W.2d
at 34). "Appellant, in order to plead a cause of action in her bill of review, would still
have to allege that she had a meritorious defense, and that her failure to present such
defense was not caused by any fault of negligence of her own." Farias, 453 S.W.2d
at 319. Farias's alleged meritorious defense was found to be conclusory, vague, and
so general as to be subject to the special exceptions which were filed.


 Id. 
         Garza, arguing he was not obligated to present a meritorious defense because
the central issue was whether he had been personally served, relies upon Rosser, 378
S.W.2d at 31, Petro-Chemical, 514 S.W.2d at 244, and Buddy "L" Inc. v. Gen. Trailer
Co., Inc., 672 S.W.2d 541, 545 (Tex. App.–Dallas 1984, writ ref’d n.r.e.).


 The
Attorney General responds that the finding that Garza was properly served disposes
of the issue, since he could have acted earlier to pursue other available legal remedies. 
         In Rosser, the court believed that Hanks had been misled by the erroneous
official information given by the clerk. The court held that "if a litigant is misled or
prevented from filing a motion for new trial by misinformation of an officer of the court
. . . the trial court, upon finding that the party has a meritorious defense and that no
injury will result to the opposite party, may grant the bill of review." Rosser, 378
S.W.2d at 31. This language still mandates that a meritorious defense be presented.
In Petro-Chemical, the petitioner sought to set aside a default judgment in order that
he might have the opportunity to show that he had a meritorious defense. The court,
citing Rosser, discussed the judicial and legislative history of rule 306d and the rule's
purpose and observed:
The finality of judgment is an important consideration, but in our opinion
a court of equity should not be utterly without power to grant relief
where the right to attack an unjust judgment has been lost through the
failure of the clerk to perform the mandatory duty imposed by Rule 306d.
. . . We hold that where the other conditions discussed below are met,
a bill of review may be predicated on the clerk's failure to send the notice
required by Rule 306d.
Petro-Chemical, 514 S.W.2d at 245 (emphasis added). The conditions then
immediately addressed "below" by our sister court included the need to present a
meritorious defense. The court relied upon Overton v. Blum, 50 Tex. 417, 423-24
(1878), which held that the trial court acted properly in dismissing the bill of review
since that appellant had failed to show "that he has suffered any such injury . . . as
would warrant a court of equity to enjoin or set aside the previous judgment." Petro-Chemical, 514 S.W.2d at 245-46. In other words, it was still important to make a
prima facie case of a meritorious defense: 
In the first place, final judgments should not be disturbed unless there is
good reason for doing so. And secondly, a failure to consider the merits
of the first judgment in the bill of review proceeding might make two
appeals necessary when the petition for a bill of review was denied by
the trial court. . . . The applicant should set out in his petition with some
particularity the errors he claims were committed against him in the trial
and disposition of the original suit. He should also introduce the
transcript, and the statement of facts where needed in the consideration
of the alleged errors, in the original suit. 
 
Id. at 246. 
         In his petition for bill of review, Garza alleged that Yogi told him at one point
that he was not the child's father and, more importantly, that his earnings history
failed to support or justify the award of child support and back child support. He set
out with particularity the problems with the judgment. Attached to the petition is
Garza's affidavit, in which he addresses the issue of notice of the paternity suit,
paternity of the child, child support that he had been paying, and his ability to pay at
the rate assessed by the trial court. We conclude that the petition for the bill of
review adequately alleged a meritorious defense and particularized supporting facts. 
         Garza introduced the clerk's and reporter's records from the bill of review
proceedings. Although counsel for Garza argued that he did not need to present a
meritorious defense because he relied upon his contention of lack of proper service,
he also urged that he was nevertheless ready and able to proceed with presenting a
prima facie meritorious defense. The trial court repeatedly advised that it would not
proceed to the merits. Garza cannot be penalized for a decision of the trial court that
prevented him from addressing a meritorious defense at the hearing. We note further
that no controverting evidence or testimony was presented on the issue. 
F. Mootness Based Upon Partial Compliance with the Default Judgment
         We address the final contention of Garza, because a trial court finding exists on
this issue. The trial court apparently based its denial of the bill of review on two basic
premises: (1) laches; and (2) its conclusion that the controversy became moot when
Garza undertook to comply with the judgment by arranging to pay child support in
accordance therewith. 
         We note there were three components to the default judgment in issue here: (1)
determination of paternity; (2) an award of future child support; and (3) an award of
back child support. Garza effectively acknowledged the determination of paternity and
the obligation to pay future child support. The record reflects he made arrangements
with his employer to begin child support payments when he received notice of the
enforcement action filed by the Attorney General of Texas. Garza argues, however,
that he believed he was paying only future child support and was not accepting the
judgment’s award of $47,058 in back child support. He argues that compliance with
the order to pay future child support does not prevent him from challenging the default
judgment. Garza contends further that his compliance with a portion of the judgment
was not voluntary. 
         Garza acknowledges that in Valley Baptist Med. Ctr. v. Gonzalez, 33 S.W.3d
821 (Tex. 2000) (per curiam), the appeal became moot when the appellant produced
a representative for deposition, thereby complying with the trial court's discovery
order. However, the case is distinguishable–the entire issue on appeal in that matter
involved the discovery order and an emergency motion to stay the depositions. Upon
production of the witness, there ceased to be a live controversy. Id. at 822.
         In Employees Fin. Co. v. Lathram, 369 S.W.2d 927 (Tex. 1963), the underlying
judgment had already been paid in full by United, a non-appealing defendant. If the
claim were remanded, the trial court would be faced with "no prosecuting plaintiff,
with no judgment against petitioners, with all legal obligations of the petitioners to the
plaintiff discharged by United and with no pleadings by United seeking contribution
from petitioners." Id. at 930. Since reversal and remand would afford no effective
relief whatsoever, the matter was deemed to be entirely moot. Id. at 929-30. The
reasons for mootness in Lathram are distinguishable from the situation here. 
         In Riner v. Briargrove Park Prop. Owners, 858 S.W.2d 370 (Tex. 1993) (per
curiam), the supreme court agreed that where a party "does not voluntarily pay a
judgment, his appeal is not moot. A party does not voluntarily pay a judgment if he
satisfied that judgment after execution of a judgment." Id. at 370 (citations omitted)
(citing Highland Church of Christ v. Powell, 640 S.W.2d 235, 236 (Tex. 1982)). Riner
paid the judgment only after Briargrove sought to execute its judgment against him.
Riner, 858 S.W.2d at 371. The court determined the circumstances failed to reflect
a voluntary payment, Riner had not waived his appeal, and the issue was not moot. 
Id. 
         Applying this law to the facts of this case, we agree that Garza did not waive
his right to a bill of review, and a bill of review was not moot simply because Garza
undertook to pay child support after being notified of the enforcement action by the
Attorney General of Texas.
G. Disposition
         We are thus faced with the situation where two of the findings of the trial court
cannot be sustained. The order of December 31, 2001, denying the bill of review
reflects only that, after reviewing the evidence and hearing the arguments, the bill of
review was denied. Costs were assessed against Garza. The findings of fact and
conclusions of law, which issued January 11, 2002, reflect the trial court's
determination of the following: (1) Garza was properly and personally served with
process on March 30, 1999; (2) he failed to respond and failed to appear at the
hearing; (3) he received actual notice of the judgment in November 1999; (4) after that
he began to comply with the judgment; (5) despite learning of the judgment in
November 1999, he failed to take any action until 2001 when the Attorney General
began its enforcement action; and (5) there is no basis in fact or in law to grant the
bill of review which was denied.
         We review a trial court's challenged conclusions of law as legal questions. BMC
Software Belg., N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002). Accordingly,
we apply a de novo standard. In re Humphreys, 880 S.W.2d 402, 404 (Tex. 1994);
Asai v. Vanco Insulation Abatement, 932 S.W.2d 118, 121 (Tex. App.–El Paso 1996,
no writ). An appellant may not challenge a trial court's conclusions of law for factual
sufficiency. BMC Software, 83 S.W.3d at 794. However, we determine the
correctness of the trial court's legal conclusions drawn from the facts. Id. If we
determine that a conclusion of law is not correct, but the trial court rendered the
proper judgment, the incorrect conclusion of law does not require reversal. Id. Thus,
in reviewing challenges to a trial court's conclusions of law, we sustain the judgment
on any legal theory supported by the evidence. In re A.M., 101 S.W.3d 480, 484
(Tex. App.–Corpus Christi 2002, no pet.). We do not reverse an incorrect conclusion
of law if the trial court's findings of fact support a correct legal theory. Id. at 485. 
         We conclude that the determination that two of the findings cannot be
sustained will not govern the ultimate decision in this matter. The trial court also
included in its findings that Garza was properly served in March 1999, prior to the
hearing on the matter, and that it could find "no basis in fact or in law to grant the bill
of review." We interpret this to mean that the trial court considered "any legal theory
supported by the evidence." In re A.M., 101 S.W.3d at 484. Accordingly, we may
presume that the trial court considered the three requisites that would entitle a
petitioner to relief through bill of review. See King Ranch, 118 S.W.3d at 752 (citing
Hagedorn, 226 S.W.2d at 998); see also Wembley, 11 S.W.3d at 927; Baker, 582
S.W.2d at 407-08. Thus, we conclude:
         1.      Garza, by the circumstances presented here, is excused from urging that
he was precluded from presenting a meritorious defense through the
fraud, accident, or mistake of the opposing party. See Transworld Fin.
Servs., 722 S.W.2d at 408 (citing Rosser, 378 S.W.2d at 35).
 
         2.      Garza alleged, with particularity, sworn facts sufficient to constitute a
prima facie meritorious defense and, as a pretrial matter, presented prima
facie proof to support the contention. 1985 Chevrolet Pickup Truck, 778
S.W.2d at 464. 
 
         3.      Garza remained obligated to establish that his failure to earlier tender the
meritorious defense was not due to his own negligence. Mowbray, 76
S.W.3d at 683; Hagedorn, 226 S.W.2d at 998. Garza's argument
presented at the hearing on the bill of review was that he was not
negligent because he was not properly served and had no notice of the
suit. Garza was also obligated to establish that he was not negligent in
pursuing all legal remedies available to him. 

         We have already concluded the evidence is legally sufficient to sustain the
finding that Garza was properly served. We further conclude that the trial court did
not abuse its discretion in determining that Garza failed to satisfy all the prerequisites,
including the absence of his own negligence, for relief through bill of review. We
overrule Garza's second issue.
VI. CONCLUSION
         We affirm the trial court's denial of the petition for bill of review. 

                                                               ERRLINDA CASTILLO
                                                               Justice 


Opinion delivered and filed this 
the 9th day of June, 2005.